The ÆTNA FIRE INSURANCE COMPANY *vs.* TYLER.

A party in possession of a dwelling-house, under a valid subsisting con-
tract of purchase, although he has not paid the whole consideration mo-
ney, has an insurable interest; and if he applies for insurance, represent-
ing the house as *his*, and it is described in the policy as *his dwelling-house*,
is not guilty of a *misrepresentation* or *breach of warranty* so as to avoid the
policy.

In case of loss he is entitled to recover the *full value of the building* to the ex-
tent of the sum insured, although previous to his effecting the insurance, his
*vendor* had procured the same house to be insured in his own name, if such
prior policy was not assigned to the purchaser previous to the loss.

Policies against fire are personal contracts with the *assured*, and do not pass
to a purchaser of the property insured or to an assignee, without the con-
sent of the underwriters; if the assured sell the property and parts with
*all his interest* therein before the loss happens, the policy is at an end un-
less it is assigned to the purchaser; if he retains a *partial interest* in the pro-
perty, the policy will protect such interest.

*It seems* that when the property insured is sold, and a portion of the consid-
eration money remains unpaid, and the assured recovers the amount of his
loss from the underwriter, that the latter is entitled to be *substituted* in the
place of the assured, in respect to his rights and remedies against the pur-
chaser.

Where by the *terms of a policy* it is provided that in case the assured shall
already have *any other insurance*, not notified, the policy shall be void, and it
is declared that in case of *any other insurance* upon the property, whether
prior or subsequent, there shall be only a *pro rata* recovery in case of loss,
and one of the *conditions* attached to the policy is that notice of *all previous
insurances* shall be given at the peril of forfeiting the policy, IT WAS HELD,
that a purchaser of a dwelling-house, who effected insurance upon it, was
not bound to give notice of a previous policy effected by his vendor, unless
such previous policy were *assigned* to him.

The *certificate* of loss need not be in the *precise words* specified in the policy;
if it be so drawn as evidently to mean the same thing, it is enough: and
accordingly, where the condition required that the magistrate should state
in his certificate *that he was acquainted with the character and cicumstances
of the person insured*, and that having investigated the circumstances in re-
lation to the loss, he knew or verily believed that the *assured had sus-
tained loss to the amount mentioned in the certificate*, IT WAS HELD, that
a certificate of the magistrate that he *resided within two miles of the place*,
*was acquainted with the assured, and that the assured had sustained loss to*

ALBANY,          *the amount of the buildings mentioned in the account of loss of the assured,*
Dec. 1836.       *was a sufficient compliance with the terms of the condition.**

Ætna Fire In.
Company          ERROR from the supreme court.  Tyler sued the Ætna
   v.            Fire Insurance Company, on a policy against fire on a dwell-
Tyler.           ing-house.  In his application in writing he stated that he
                 wished to " effect  an insurance  *on  my house* in which I re-
                 side," and the  policy  itself  stated that the plaintiff  was in-
                 sured upon  *his two story frame dwelling-house.*  The insu-
                 rance  was to the  amount  of $1500,  for the  period of one
                 year from 24th August, 1827, and within  the year the house
                 was consumed by fire.  The ninth condition of the policy
                 requires that all  persons  insured by the  company sustaining
                 loss by fire shall forthwith  give  notice  thereof, and deliver
                 in a particular account of the loss, verified by oath  or affir-
                 mation;  and  shall also  declare on oath whether any  and
                 what other  insurance  has  been made upon the  same  pro-
                 perty, and procure  a  certificate under the hand of a magis-
                 trate, notary  public or clergyman,  that he is  " acquainted
                 with the  character and  circumstances of  the person or per-
                 sons insured, and  that having  investigated the circumstances
                 in  relation to such  loss, does know  or verily  believes that
                 he, she or they,  really and  by misfortune, and without fraud
                 or evil  practice, hath or have sustained  by such  fire  loss
                 and damage to the  amount  therein  mentioned."  The plain-

---

* The CHANCELLOR,  in the opinion  delivered  by  him,  asserts  the  general
proposition laid down  in this  paragraph,  but considers it  *inapplicable*  to the
certificate furnished in this case, which he holds to be radically defective, and
therefore comes to the conclusion  that the judgment  of the  supreme  court
*ought  to  be reversed.*  He further expressed the opinion  that the words  *there-
in  mentioned*  in the ninth condition of the policy mean  that the  *amount of loss*
shall  be specified  in the  certificate of the  magistrate, and  not  in  the *account
of loss* of the assured, but  that the  condition would be  complied with if the
certificate sufficiently  *referred*  to the account of loss for the amount of the
damage sustained.

The CHANCELLOR,  in the  discussion of this case, also expresses  the  opin-
ion, that if the *preliminary proofs* are not  strictly conformable to  the  condi-
tions in  *matter of form,* and the underwriter on  that  ground refuses  to pay,
that good faith  requires that  he should  apprize  the  assured of the  reason of
his refusal, so  that the  defect may be supplied;  and if he  neglect to do so,
that his *silence* should be held a  waiver  of the defect.

tiff gave in an *account of his loss*, verified by his oath, in which he stated that the dwelling-house occupied as a public inn, horse-shed, wood-shed and barn particularly described in the policy, were consumed entirely by fire; that the whole property before mentioned, with a store and dwelling-house adjoining such horse-shed, was completely demolished, &c. with furniture which was in the inn to the amount of $600; that the property covered by the policy was worth about $2500; that such property " was not insured by any other person or persons, nor by him at any other office," and " that the damages and loss which he had sustained exclusive of furniture is nearly $2500." The plaintiff also produced a *certificate of a magistrate* in these words : " I, William Groves, one of the justices, &c. residing in the town of Clarkson, and within two miles of the place mentioned in the policy above described, do certify that I am acquainted with Whitman M. Tyler in the state policy mentioned ; and that I have, this twenty-second day of April instant, examined the circumstances attending the fire in said Tyler's certificate mentioned ; and I do certify that I am satisfied and do verily believe that the said Tyler has, by misfortune and without fraud or evil practice, sustained damage or loss by said fire to the amount of the buildings therein mentioned." On the trial of the cause the above account of loss and certificate of the magistrate were produced as preliminary proofs, and objected to by the counsel for the defendants as defective, on the ground that the magistrate in his certificate did not state that he was *acquainted with the character* and *circumstances of the plaintiff*, and *did not state the amount of loss* and damage sustained by the plaintiff; and further, that if received in evidence, they did not support the averments in the declaration in respect to the same. The circuit judge overruled the exception, and the defendant's counsel excepted.

The policy in the body thereof contained the following conditions : " Provided further, in case the *insured* shall have already any other insurance against loss by fire *on the property hereby insured*, not notified to this corporation, and mentioned in or endorsed upon this policy, then this in-

surance shall be void and of no effect; and if the said *insured* or his *assigns* shall hereafter make any other insurance on the same property, and shall not with all reasonable diligence, give notice thereof to this corporation, and have the same endorsed on this instrument, or otherwise acknowledged by them in writing, this policy shall cease and be of no further effect. And in case of any other insurance upon the property hereby insured, whether *prior* or *subsequent* to the date of this policy, the insured shall not in case of loss or damage, be entitled to demand or recover on this policy, any greater portion of the loss or damage sustained than the amount hereby insured shall bear to the whole amount insured on the said policy." The policy contained the usual clause referring to the conditions attached thereto, viz. that it was made and accepted in reference to the proposals and conditions annexed, which it was declared "are to be used and resorted to in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for." The *fifth* condition is in these words: "*Notice of all previous insurances* upon property insured by this company shall be given to them and endorsed on this policy, or otherwise acknowledged by the company in writing, at or before the time of their making insurance thereon, otherwise the policy made by this company shall be of no effect," &c.; and a portion of the *ninth* condition is in these words: "Also, if there appear any fraud or false swearing, the claimants shall forfeit all claim by virtue of this policy."

After the plaintiff had rested, the counsel for the defendants offered to prove that the plaintiff, at the time he effected the insurance, held the property insured only by an executory contract upon which he had paid but a small sum for the purpose of showing that the *title* to the property was not in him; and for the further purpose of showing a *fraudulent concealment* of the nature and extent of his interest. The evidence was objected to, but the objection was overruled. The defendants then produced in evidence a *contract* between one F. Shafer and the plaintiff, bearing date 2d July, 1827, whereby Shafer bargains and sells the lot,

on which the house insured is situate, to the plaintiff, and covenants to convey the premises in fee, on the plaintiff performing the covenants on his part, or on neglect to convey, to pay all damages, The plaintiff, on his part, covenants to pay $700 in cash by instalments, and $1300 in an article for land, which he agrees to assign the next day, and to pay the money due and to grow due upon the article; and when entitled to a deed, to convey the land to Shafer. On the back of the contract were endorsements, by which Shafer acknowledged that the assignment of the article was duly executed on the 3d July, 1827; that on the 2d October, 1827, he had received of the plaintiff $50, and on the 10th January, 1828, the further sum of $111; and it was proved that $500 remained due under the article to the owner of the land. The counsel for the defendants also offered to prove, for the purpose of shewing fraud on the part of the plaintiff in relation to the burning of his house, that at his solicitation a much greater sum had been inserted in the contract of purchase of the premises than was the actual price agreed upon by the parties; this evidence was objected to by the plaintiff, but admitted by the judge, and testimony was accordingly given as to such over valuation; and witnesses were examined on both sides as to the *real value* of the property. The defendants also offered to prove that *Shafer*, (the bargainor of the plaintiff) had procured an insurance upon the same property, by a policy underwritten by the *Merchants' Insurance Company of Albany*, on the 30th June, 1825, and that the same had been continued by renewals from year to year; the last renewal having taken place on the 28th May, 1827, continuing the policy until the 28th May, 1828. The plaintiff objected to this evidence, but the judge ruled it to be admissible, and it was accordingly adduced, and the defendants proved that the plaintiff knew of the existence of such policy at the time that he procured insurance from them.

The counsel for the defendants insisted, 1. That the policy was void by reason of the misrepresentation of the plaintiff as to the extent of his interest in the building insured, and in the concealment of the nature and extent of

such interest. The judge charged the jury that the application for the insurance and the description of the property therein contained, was not such a misrepresentation, (unless it was fraudulently done,) as would avoid the policy. 2. They insisted that the policy declared on was void by reason of the plaintiff's omission to give notice to the defendants of the policy executed to *Shafer*. The judge charged the jury that the plaintiff was not under any obligation to give notice of the policy executed to Shafer. 3. They insisted that if the policy to Shafer did not *per se* render the policy declared on void, yet if the plaintiff at the time of his application to the defendants for insurance knew that the policy to Shafer was in force, the omission to disclose the existence of such policy was such a fraudulent concealment of a fact material to the risk as avoided the defendants' policy. The judge charged the jury that the knowledge on the part of the plaintiff of the existence of Shafer's policy, and his neglect to disclose the fact were circumstances (inasmuch as no fraud was alleged on the part of the plaintiff) which, under the evidence in the case, could not legitimately influence their verdict. 4. They insisted that if the plaintiff was entitled to recover, he could recover only the amount of his loss, deducting therefrom a proportionable part of the amount in arrear and unpaid to Shafer. The judge charged the jury that the plaintiff was entitled to recover, if any thing, the actual value of the premises insured to the extent of the insurance. 5. They insisted that the plaintiff was entitled to recover only such proportion of the loss as the amount insured by the defendants bore to the whole amount insured by them and the other company. The judge charged that the plaintiff, if entitled to recover any thing, must recover the full value of the premises insured. 6. They insisted that the plaintiff was not entitled to recover interest. The judge charged that the plaintiff was entitled to recover interest. The questions of fraud in the obtaining of the policy, and of false swearing on the part of the plaintiff in making his preliminary proofs, were submitted by the judge to the jury, who found a verdict for the plaintiff for the full amount of the sum insured, together

with the interest thereof. The defendants' counsel having excepted to the several decisions made by the judge, except the decision upon the third proposition above stated, applied to the supreme court for a new trial, which was denied and judgment rendered upon the verdict. The court in refusing a new trial, based their decision upon the opinion pronounced in the same cause upon a former occasion, when a verdict had been rendered for the *defendants.* See opinion, 12 Wendell, 512. Previous to the verdict for the defendants the plaintiff had been *nonsuited,* and upon setting aside that nonsuit an opinion was delivered, referred to in 12 Wendell 512, which not having been heretofore published, is now inserted in this case ; it is in these words :

" *By the Court,* NELSON, J. This is an action upon a policy of insurance. The judge nonsuited the plaintiff on the grounds, 1st. that the preliminary proofs required in the 9th condition of the policy were insufficient, specifying particularly the justice's certificate; 2d. That the proofs if sufficient did not support the declaration ; and 3d. On account of the misrepresentation and concealment of the nature and extent of the plaintiff's interest in the property insured.

" I think the court erred on all the points. The ninth condition among other things, in case of loss, requires the insured to procure a certificate of a magistrate that he is acquainted with the character and circumstances of the insured, and that having investigated the circumstances in relation to such loss, knows or verily belives that the insured really and by misfortune and without fraud or evil practice, has sustained by such fire, loss or damage to the amount therein mentioned, (meaning in the affidavit of the assured.) Notwithstanding the great strictness with which these preliminary proofs are required to be made, I am satisfied that the certificate proved was a substantial compliance with the spirit and meaning of the above condition. It is said that the justice does not certify that he is acquainted with the character and circumstances of the assured. He certifies that he resides within two miles of him, and that he is acquainted with him, which amounts substantial-

ALBANY,
Dec. 1836.

Ætna Fire In.
Company
v.
Tyler.

ly to the same thing. It is also objected, that he does no state in the certificate the amount of the loss by the fire. The plaintiff's affidavit states the loss at nearly twenty-five hundred dollars, exclusive of furniture, and the certificate adopts that amount as true. The words, " amount of the buildings therein mentioned," mean the value of the buildings as specified in the plaintiff's affidavit. The averment of the facts in the declaration, as contained in the certificate of the justice, do not correspond with the proof as to the amount of the loss according to the above construction. It is stated in the declaration at fifteen hundred dollars, which is the amount insured ; but the plaintiff does not profess to set out the certificate in hæc verba, and the variance is immaterial. Thus far the objections are purely technical, without touching the merits of the case.

" The third objection is, that the policy is void for the misrepresentation of the plaintiff as to the extent of his interest in the buildings insured and the concealment of the nature and extent of such interest. The plaintiff purchased of one Frederick Shafer the premises upon which the buildings in question stood on the 2d July, 1827, and took a contract for a deed, in which he bound himself to pay for the same $2000, in the manner stated in said agreement. There can be no doubt the plaintiff has an insurable interest in the property insured, within all the cases on the subject. 1 Wendell, 85. 13 Mass. R. 67, and cases there cited. See also 13 Mass. R. 268, and 1 Johns. R. 385. He was not bound to disclose his interest on the application for insurance, unless particlarly inquired of by the company, and had a right to insure as general owner. Phillipps on Ins. 94, and cases there cited. 13 Mass. R. 268, 69. 1 Caines, 283. New trial granted ; costs to abide the event."

Judgment having been rendered for the plaintiff upon the verdict rendered in his favor, the defendant sued out a writ of error.

The cause here was argued by

*I. L. Wendell & S. Stevens,* for the plaintiffs in error.

*M. T. Reynolds & S. Beardsley,* (attorney-general,) for the defendant.

*Points for plaintiffs in error:* I. The preliminary proofs are defective in not conforming to the requirements of the *ninth* condition of the policy, and do not correspond with the averments in the declaration. 1. The magistrate does not state in his certificate that he is acquainted with the character and circumstances of the insured. 2. He does not state the amount of damage which he knows or believes that the assured has sustained. A compliance with the terms of the policy in this respect is a condition precedent, and must be strictly and literally fulfilled ; a substantial compliance is not enough—the very object of a warranty being to preclude all question as to a substantial compliance. 1 Condy's Marshall, 346, 7, 8, 370. *Wood and others* v. *Worsley,* 6 T. R. 710. *Inman* v. *Western Ins. Co.,* 2 Wendell, 456. *Fowler* v. *Ætna Ins. Co.,* 6 Cowen, 676. 3 Kent's Comm. 376. *Pawson* v. *Watson,* Cowp. 782. *Blackhurst* v. *Cockell,* 3 T. R. 360. *De Hahn* v. *Hartley,* 1 id. 343. 2 id. 186. 1 Chitty's Pl. 304.

II. The judge erred in charging the jury that the application for the insurance and the description of the property therein contained, was not such a representation as would avoid the policy ; and the qualification, unless it was fraudulently done, did not cure the error. He should have submitted to the jury the questions, whether there had been a misrepresentation, and whether such misrepresentation was or was not material to the risk. *The Columbian Ins. Co.* v. *Lawrence,* 2 Peters, 25 ; Re-affirmed, 10 id. 507. See also opinion of supreme court in this very case, 12 Wendell, 515 ; *N. Y. Fire Ins. Co.* v. *Walden,* 12 Johns. R. 513.

III. The judge should have charged the jury, that the omission of the plaintiff to give notice of the previous insurance by the Merchants Company, rendered the policy of the defendants void ; and he erred in charging that such omission could not legitimately influence the verdict of the jury. He should have submited the question of omission,

and its materiality as to risk, to the consideration of the jury. He particularly erred in the reason he assigned, viz. that no fraud in fact was alleged by the defendants, when fraud was not only alleged, but proved in repeated instances. See opinion of the supreme court in this very case, 12 Wendell, 515.

IV. The judge erred in charging the jury that the plaintiff was entitled to recover the amount of the actual value of the premises to the extent of the insurance, if he was entitled to recover any thing. He should have charged them that the utmost extent to which the plaintiff was entitled to recover, was the amount of the payments actually made by him. 2 Marsh. on Ins. 789. Bell's Comm. I. 626. 2 Caines' R. 13 ; 2 Caines' Cas. in Er. 110, S. C. 1 Phil. 41, 304, 305, 320. 13 Mass. R. 61, 267.

V. The judge erred in refusing to charge the jury that the plaintiff, if entitled to recover at all, was entitled to recover only a rateable proportion of the sums insured by the defendants and the Merchants' Company ; and he erred in charging that the plaintiff was entitled to recover the full value of the premises.

VI. The policy of the defendants was void for breach of the warranty, that the building insured was the property of the plaintiff—he having represented it as " *my house*, in which I reside," and it being described in the policy as " *his two story frame dwelling-house.*" 1 Phil. on Ins. 125. *Fowler* v. *Ætna Fire Ins. Co.*, 6 Cowen, 673, and 7 Wendell, 274, S. C. *Columbian Ins. Co.* v. *Lawrence*, 2 Peters, 25, and 10 id. 507. S. C.

*Points for defendant in error :* I. The certificate of the magistrate (William Groves) was sufficient. It contained *in substance* all that was required by the ninth condition of the policy. 7 Cowen, 649. 9 Wendell, 166. 8 id. 81.

II. The objection that the proofs did not support the averments in the declaration in relation to a compliance with the ninth condition of the policy, and the exception founded thereon, were not well taken. 1. The objection and exception are *too general;* they should have speci-

fied the particular deficiency. 12 Wendell, 111. 18 Johns.
R. 559. 2. The objection and exception were, not that
there was a variance between the proof and the averments,
but that the proof was not sufficiently cogent to support the
averments. If the charge was in this respect erroneous,
(which is not admitted,) the remedy was by a motion for a
new trial, and not by a writ of error. 2 Caines, 168. 3. But
if the exception was sufficiently explicit, and if it pointed to
and was founded on alleged variance, it was not well taken ;
the proof agreed with and sustained the averments. 2 Marsh.
on Ins. 731.

III. The written application for insurance was in no sense
a misrepresentation which affected the policy, nor was there
any concealment which could produce that effect. 12 Johns.
R. 513.

IV. It was not in any event necessary to give notice to de-
fendants of the prior policy to Shafer; certainly it was not
necessary to do so under the circumstances stated in the pro-
position excepted to.

V. The plaintiff was entitled to recover, if any thing, the
actual value of the premises to the extent of the insurance,
and that without regard to Shafer's policy.

VI. Interest was recoverable from sixty days after notice
and preliminary proofs, &c. 2 Phil. on In. 497 and cases
cited.

The following opinion was delivered :

By the CHANCELLOR. There is no misdescription in this
case of the subject of insurance in the policy. Neither was
there any misrepresentation or concealment of any fact on
the part of the assured, which was all material to the
risk, in the application for the insurance ; and the jury have
negatived all pretence of fraud on the part of Tyler, in not
disclosing the true state of his title. It is a fact of public
notoriety that a great portion of the property in the eighth
senate district, and much in every other part of the state, is
held by those who are considered the real owners thereof
for most purposes, under contracts, without having paid
the whole purchase money, and obtained legal conveyances ;
and this court certainly cannot presume that the officers of

ALBANY,
Dec. 1836.

Ætna Fire In.
Company
v.
Tyler.

this or any other insurance company in the state are igno⸱ rant of this fact, or that they considered the fact as in any way material to the risk. If they considered it material that the state of the legal title should be disclosed they would, in their notices to the public specifying the information required from country applicants, have inserted this as a necessary part of that information. Yet this is not required in any conditions which I have seen except in the case of mutual insurance companies, where the true state of the title is material to enable the officers of the company to judge of the security which the insured premises will afford for the payment of the premium note, if an assessment should become necessary. It is also a fact of public notoriety, that in common parlance the person who is in possession of real property as owner, under a valid and subsisting contract for the purchase thereof, whether he has paid the whole of the purchase money, and gotten the legal title or not, is called the owner thereof, and the property is usually called *his* by others. In equity it is, in fact, his ; and the vendor has only a lien thereon for the security of his unpaid purchase money ; and I am yet to learn that the person who is in the actual possession of property as the real owner thereof in equity, and who must sustain the whole loss thereof primarily in case of its destruction by the perils insured against, cannot insure it as owner, unless there is something in the terms of the policy, or in the conditions referred to therein, requiring the true state of the legal title to be disclosed. See 10 Pickering's Reports, 40, 542.

The assured in this case had also an insurable interest to the full value of the dwelling-house described in the policy ; and the liability of the underwriters to him was neither diminished nor impaired by the previous policy which the person from whom he purchased had obtained from another company. To constitute a double insurance, both policies must be upon the same insurable interest, either in the name of the owner of that interest, or in the name of some other person for his benefit. In this case Tyler could not claim any benefit under the policy of Shafer, as it had not been assigned to him with the assent of the underwriters

therein at the time of the loss. It could not, therefore, in any event protect him against any portion of the loss he might sustain by the destruction of the house insured, or prevent his liability for the payment of the whole of the purchase money due on his contract. Policies against fire are personal contracts with the assured; and they do not pass to an assignee or purchaser of the property insured without the consent of the underwriters. *Lynch* v. *Dayrell*, 3 Bro. P. C. 497. *The Sadlers' Company* v. *Badcock*, 2 Atk. 554. If the assured, therefore, sells the property and parts with all his interest therein before the loss happens there is an end of the policy unless it is assigned to the purchaser with the assent of the company; or if he retains but a partial interest in the property, it will only protect such insurable interest as he had in the property at the time of the loss. In the present case all the insurable interest which *Shafer* had in the property after his sale to *Tyler*, was the amount of his unpaid purchase money, so far as the land upon which the house stood was insufficient to protect him from loss; and provided the purchaser was unable to pay the same. Even a recovery by Shafer from the other company, would not protect Tyler from any part of the loss sustained by the destruction of the building, as he would still be liable for the whole amount of the purchase money. Shafer, indeed, could not recover that money and retain it for his own benefit, after he had been paid by his underwriters; but it could be collected in his name for the benefit of such underwriters, as they are in equity entitled to all his rights and remedies if they pay the amount of his loss. This principle of equitable subrogation or substitution of the underwriters in the place of the assured, is recognized by every writer on the subject of insurance, and is constantly acted upon in courts of law as well as in equity; so that where the assured has any claim to indemnity for his loss against a third person who is primarily liable for the same, if the assured discharges such third person from his liability before the payment of the loss by the underwriters, he discharges his claim against them for such loss, *pro tanto*. Or if he obtains payment

ALBANY,
Dec. 1836.

Ætna Fire In.
Company
v.
Tyler.

from such third person afterwards, it is in the nature of salvage, which he holds as trustee for the underwriters who had paid his loss. Thus, in the case of *Gracie* v. *The New-York Insurance Company*, 8 Johns. R. 246, where the assured recovered to the full amount of the policy upon a condemnation of the vessel and cargo under the Berlin and Milan decrees, although there was no abandonment of the *spes recuperandi* against the French government, Chief Justice Kent says that if France should at any time hereafter make compensation for the capture and condemnation, the United States upon the receipt of the money, would hold it as trustee for the party having the equitable interest therein; and that would clearly be the underwriter. So, in the case of *Godsall* v. *Bolders*, 9 East R. 72, which was the case of an insurance by a creditor upon the life of Mr. Pitt, the British minister, who died insolvent, and the government afterwards granted a sum of money to the executors to pay the debts, the court of King's bench held that the underwriters were entitled to the benefit of the payment made to the creditor by the executors, although there was an actual total loss before the grant by the government to pay the late premier's debts. So, in the case of *Mason* v. *Sainsbury*, referred to as a manuscript case by Marshall in his treatise on Insurance, 2 Condy's Marsh. 794, and which is recognized as good law in the recent case of *Clark* v. *The Inhabitants of Blything*, in the court of King's bench, the assured, who had received his whole demand from the underwriters for the loss sustained by a fire, was permitted to recover the same from the inhabitants of the hundred who were also liable to him upon the statute; or rather the underwriters were permitted to recover the same in his name, the suit being prosecuted for their benefit. The same principle as to the equitable right of the insurer to be subrogated to all the rights and remedies of the assured to obtain compensation for his loss from other persons, was acted upon by the vice-chancellor of the first circuit in the recent case of *The Atlantic Insurance Company* v. *Storrow and others*, where an attempt was made, by the master and owners of the vessel who were primarily liable for a loss of

goods by thieves, to throw the loss upon the underwriters, and to deprive them of their remedy over against those who were liable to the assured to make good his loss ; and the decision of the vice-chancellor in that case was affirmed upon appeal. See 5 Paige's R. 285. The rule on this subject is thus correctly laid down by *Phillipps* in his valuable treatise on the law of insurance, which has become a text book in the American courts : " Where the insurable interest consists of a debt due to the assured, as in the case of advances made by a consignee, or a policy on the life of the debtor, the assured is bound, no doubt, to assign to the underwriters his debt or his insurable interest, whatever it may be, in case of his being paid a total loss." 2 Phil. on Ins. 282. It is evident, therefore, in the case under consideration, that the two insurances, after the sale and when the last insurance was made, were upon two distinct and separate interests. The subject matters thereof were different : the one being upon Tyler's debt to Shafer, which might be lost by the destruction of the house if the vendee was unable to pay, and the other upon the actual loss of the house. The loss of the house must fall upon the holder of the last policy, in any event, as the underwriters in the first policy will be entitled to an assignment of Tyler's contract to pay the purchase money, and may collect the full amount thereof from him if they shall pay to Shafer the full amount of his debt. I am satisfied from this view of the rights of the different parties that there was no prior insurance, within the meaning of the policy, of which the assured was bound to give notice, or which could be resorted to by him to obtain satisfaction for part of his loss.

The clauses in the *policy* and in the *conditions* annexed to the same on the same subject, unquestionably were intended to mean the same thing; and if they differ in any respect, the policy itself must be resorted to to explain the meaning; as it would then be a case which would be specially provided for in the policy, otherwise than in the conditions annexed. The language of the policy is sufficiently broad to cover *any previous insurance* on the property in which Tyler had an interest, or which could pro-

ALBANY,
Dec 1836.

Ætna Fire In.
Company
v.
Tyler.

tect him as the purchaser of the property, provided the previous policy had been assigned to him at the time of his purchase, with the assent of the other company. The terms of the condition are, "if the assured shall have already any other insurance against loss by fire on the property hereby insured," &c. evidently intending to cover not only insurances made by the assured and in his own name, but any others which he had, either in the name of another or by assignment for his benefit. But no one can suppose for a moment that these underwriters intended to be so unreasonable as to require a person insuring with them, under the penalty of a forefeiture of his policy, to give notice of every insurance which any former owner of the property might have made thereon, although he had no interest in that insurance, and the rights of the company could not in any way be affected thereby ; that if there was any such insurance, even in those cases where the fact was notified to the underwriters, the person insured with them should only recover a part of his loss from them, although he had no interest in and could not be benefitted by the other insurance. To suppose the underwriters intended that such a construction should be given to this part of the policy, would be to suppose that they intended to entrap those who insured with them. The plain and obvious meaning of the whole clause is, that if the assured has any other policy or insurance upon the property, by assignment or otherwise, by which the interest intended to be insured is already either wholly or partially protected, he shall disclose that fact and have it endorsed on the policy, or the insurance shall be void ; and the same where he shall make any subsequent insurance ; also, that in case of any such prior or subsequent insurance, although it is notified to the company and endorsed on the policy, the underwriters in the two policies shall contribute rateably to his loss, so that in no event he can recover more than the amount of his actual loss. I am satisfied, therefore, that the policy was valid ; that the assured had an insurable interest to the value of the house which was burned ; and as the jury have found that value to be the whole amount underwritten in the policy, he was entitled to recover that

ALBANY.
Dec. 1836.

Ætna Fire In.
Company
v.
Tyler.

amount, with the interest thereon after the sixty days, if the condition as to the proof of loss, &c. has been *complied with by him* according to the terms of the policy, or has been *waived* by the underwriters.

The certificate of the magistrate was a part of the preliminary proofs as to the nature, circumstances and extent of the loss which, by the express terms of the policy, the underwriters had a right to insist upon before any action could be sustained for such loss; but the production of this document, as well as any other part of the preliminary proofs of loss and interest, might be waived by the company. The law is well settled in this state, that if there is a formal defect in the preliminary proofs, required by the policy or the custom of the place, and which could probably have been supplied, had any objection been made by the underwriters to the payment of the loss on that ground, if the insurers do not call for the document, or make an objection on the ground of its absence or imperfection, but put their refusal to pay distinctly on some other ground, the production of such further preliminary proof will be considered as waived. *Vos* v. *Robinson,* 9 Johns. R. 192. *Ocean Insurance Company* v. *Francis,* 1 Wendell, 64. *Curry* v. *Commercial Insurance Co.,* 10 Pick. 536. I am aware that the supreme court of the United States thought differently on this question, when the case of *The Columbian Ins. Co.* v. *Lawrence,* 2 Peters, 25, was first before that court, and that it was held that the court below had improperly submitted the question of waiver to the jury upon the facts proved. The subsequent history of that case, however, shows the good sense of the rule as established in our own courts; for it appears that as soon as this decision of the supreme court was known, the assured procured a new certificate from the justice, in which the formal defects in the first were obviated, and which the same court afterwards held to have been procured in time, and to be a compliance with the terms of the contract requiring the certificate, &c. to be produced before the loss should be payable; and that it was procured within a reasonable time, under the circumstances of that case, although more than five years had elapsed after the destruction of the property before

such new certificate was procured. See 10 Peters, 507. The only effect of the original decision, therefore, was to turn the assured around to a new action, after such a lapse of time, upon an objection which was not probably thought of by either party at the time when the claim was originally made, and the preliminary proofs exhibited ; and which objection might have been immediately obviated, if it had been suggested by the officers or agents of the company, or if they had thought proper to put their refusal to pay, either upon that ground alone, or upon that in connection with others which went to the merits of the claim. Good faith on the part of the underwriters, in such a case, requires that, if they mean to insist upon a mere formal defect of this kind in the preliminary proofs, they should apprise the assured that they consider the same defective in that particular, or to put their refusal to pay upon that ground as well as others, so as to give him an opportunity to supply the defect before it should be too late ; and if they neglect to do so, their silence should be held a waiver of such defect in the preliminary proofs, so that the same shall be considered as having been duly made according to the conditions of the policy. The difficulty in the present case on this subject, however, is, that the question of waiver was not raised at the circuit, so as to give the underwriters an opportunity of showing that they had in fact insisted upon the want of a proper certificate as a necessary part of the preliminary proofs ; the court having decided that the certificate produced was such a one as the condition of the policy, required, which of course precluded all consideration of the question of waiver.

Although the underwriters, if they make the objection in time, have a right to insist upon the production of such a certificate as is specified in the conditions of the policy and from the proper person, before they shall be liable for the payment of the loss, I do not understand the rule to be so strict as to render it necessary that such certificate should be in the precise words mentioned in the policy, provided it is so drawn as evidently to mean the same thing. Even in the case of a warranty in a policy

ALBANY,
Dec. 1836.

Ætna Fire In.
Company
v.
Tyler.

although the language of the judges in many cases has been that it must be literally complied with, it has been held that a warranty to *sail* on a particular day was complied with, although the wind blew so that a sail could not be raised, and the master knew it was impossible to get the vessel to sea on that day, by his merely warping the vessel a little further down the river for the *bona fide* purpose of starting on the voyage insured, and putting the vessel in a better situation to proceed on her voyage to the port of destination as soon as the wind would permit her to go to sea. *Cockrane* v. *Fisher*, 2 Cromp. & Mees. R. 581. This decision was afterwards affirmed upon a writ of error to the exchequer chamber; the court, holding that a literal compliance with the warranty to *sail* on that day, was not necessary if the vessel was, *bona fide* and in fact, started upon her voyage by warping her down the river upon the day specified in the warranty. 5 Tyrwhitt's R. 496. If I could be satisfied, therefore, in this case, that the justice meant to certify that he verily believed the assured had sustained damage or loss by the destruction of the dwelling-house insured, to the amount of twenty-five hundred dollars, or any other specific sum, as stated in Tyler's affidavit or certificate, I should have no difficulty in concurring in opinion with the court below that the preliminary proofs were sufficient, and that the judgment should be affirmed. But when I look at the peculiar terms in which the justice's certificate is framed, and then advert to the fact that the whole of the buildings insured, and not insured, together with the land itself, were sold but a few months before for a much less sum, I cannot bring my mind to the conclusion that Groves meant to certify that he believed Tyler's loss upon the dwelling-house alone, which was the only property included in the policy, was worth about $2500 as stated in the affidavit of the latter. The condition of the policy is not that the magistrate shall state that he believes the assured has sustained damage or loss to the amount mentioned in the affidavit of the latter. The meaning unquestionably is that the certificate shall specify the sum which the magistrate believes the assured has sustained by the destruction

ALBANY,
Dec. 1836.

Ætna Fire In.
Company
v.
Tyler.

or partial destruction of the subject insured. If he believed, therefore, that the loss by the burning of the house, exclusive of the furniture, was less than the sum at which the assured had estimated it in his affidavit, it would have been a compliance with the terms of the policy if he had stated what he believed the real amount of that loss to be, although it was not, in his opinion, so great as that at which Tyler himself had stated it. Although the amount *therein mentioned*, in the conditions annexed to the policy, evidently means the amount mentioned in the certificate of the magistrate, I have no doubt the certificate would be sufficient if the fair construction of it was that he believed he had sustained damage or loss by the destruction of the subject of insurance to the amount specified by the assured in his affidavit annexed, as that in effect would be a specification of the amount in the certificate of the magistrate by reference to the affidavit to which it was annexed. But as I am unable to give such a construction to the language of the certificate in this case, I am compelled, upon this point alone, to vote for a reversal of the judgment of the court below. If other members of the court, however, are capable of giving to the certificate the meaning which the counsel for the defendant in error insist it ought to bear, there is very little danger that injustice will be done to the underwriters; as the jury have decided that the loss actually sustained by Tyler upon the property insured was equal to the whole amount of the risk assured by these underwriters.

On the question being put. *Shall this judgment be reversed?* The members of the court voted as follows:

*In the affirmative*—The Chancellor and *Senators* Edwards, Hubbard and Tracy—4.

*In the negative*—The President of the Senate, and *Senators* Armstrong, J. Beardsley, L. Beardsley, Beckwith, Griffin, Downing, Fox, Gansevoort. Huntington, H. F. Jones, J. P. Jones, Lacey. Lawyer. Loomis, Lounsberry, Mack, Maison, Powers, Wager, Willes—21.

Whereupon the judgment of the supreme court was affirmed.