## CHARLES HEATH & another *vs.* THE FRANKLIN INSURANCE COMPANY.

In a policy of insurance against fire, the building insured was described as a brick building, with "a composition roof, occupied by several tenants, and connected by doors with the adjoining building, situate at the corner of Charles Street and the Western Avenue:" it was held, that the latter words, "situate," &c., referred to the building insured, and not to the adjoining building.

If, in a policy of insurance against fire, which is evidently intended to apply to one of two buildings, the description be false in one particular, when applied to one building, and false in a different particular, when applied to the other, the policy will attach to that building, which, after rejecting as surplusage that part of the description which is false when applied to it, is the most clearly and sufficiently, provided it be sufficiently identified by the residue of the description; and, in considering, with a view to the adoption of the one or the other of the two hypotheses, which of the two particulars of the description to reject as false, the court will have regard to their relative importance as descriptive; but, if the residue of the description, after rejecting each of the particulars as false de

22*

not, in either case, sufficiently identify the building insured, the policy will be void for uncertainty.

A policy of insurance against fire provided, that a loss should be paid in ninety days "after proof thereof," and that the insurers should have the right to rebuild, at any time, within ninety days, "after notice of the loss;" the assured wrote a letter to the insurers, informing them that it "had become necessary for the assured, under policy 8650, to give notice of a loss or damage to the premises insured, which happened on the evening of. the 12th instant, and to request that they may be indemnified, according to the effect of that policy;" and no objection was made by the insurers to the form of the notice, or any request expressed for further or more particular information relative to the loss; it was held, that the letter was a sufficient compliance with the terms of the policy, as to proof and notice of loss.

THIS action, which was upon a policy of insurance against fire, was tried before *Shaw*, C. J., from whose report thereof the following facts appeared.

The policy was dated January 6th, 1842, and by it the defendants caused the plaintiffs to be insured, to the amount of six thousand dollars, on their brick building, with a "composition roof, occupied by several tenants, and connected, by doors, with the adjoining building, situate at the corner of Charles Street and the Western Avenue, in Boston. A cabinet maker's shop is in the building."

The policy also contained a clause, providing, that, "in case of any loss, the same is to be paid, without any deduction, in ninety days after proof thereof;" and a further clause, that "the assured agrees, that in case of any loss, or damage, the said company shall have the right to replace the articles lost or damaged, with others of the same kind and equal goodness, at any time within ninety days after notice of the loss."

The plaintiffs introduced evidence tending to prove, that, at the time the policy was effected, a block, consisting of two brick buildings, belonging to the plaintiffs, stood at the corner of Charles Street and the Western Avenue, the most easterly of the two being directly on the corner of the street; that the last named building was much older than the other and most westerly one, and, before the latter was built, had attached to it a brick, two-storied spur or L part, containing a kitchen in the lower story, and a breakfast room over it in the upper;

that, when the westerly building was erected, the northern wall was joined on to, and built over, the spur part, so that the wall of that part was incorporated into and made a part of the northern wall of the new or westerly building, and the rooms of the latter building, in the third and fourth stories thereof, extended over the rooms in the L; that the wall between the easterly and westerly building was entirely of brick, from the cellar to the roof, and there were three doors through it, namely, one leading from a room in the lower floor of the easterly building, occupied as a grocery, into a corresponding room in the westerly building, — a second leading from the entry of the eastern building into the lower room of what was previously the spur or L, — and a third in the second story of the easterly building, leading into the room which was before the upper room of the L; that the building on the corner, at the time the policy was made, was occupied by several tenants, was covered by a flat composition roof, and had doors in the partition wall between it and the western building; that the western building was occupied by several tenants; that it had a hipped roof, with a space on the top, of about one hundred feet, covered with composition, the remainder, containing about fourteen hundred and fifty feet, being steep pitched and slated; that in this building there was a carpenter's shop; and that, within the period mentioned in the policy, a fire occurred on the premises, by which the western building was partially consumed, and the eastern slightly injured.

The defendants contended that the policy, upon the face of it, was void; or, if not void, that it covered the easterly house only. But the presiding judge ruled, that, if the wall, constituting the original western wall of the main part of the house first built, was carried up higher, and formed the easterly wall of the new westerly building, and included in such new building the former kitchen and breakfast room, or L part; if there was no connection between such new westerly building and the old house, but by three or four doors, such wall being carried up above the roof of the old house, to

constitute the easterly wall of the new one ; if each part was occupied by several tenants, and each was a brick building, the easterly house covered with a composition roof, and the westerly in part with a composition roof; and if there was a cabinet maker's shop in the westerly building, and no cabinet maker's shop in the easterly building, each being connected with the other by doors ; then the building insured was the one lying westerly of the wall, and that lying easterly of the wall, and on the corner of Charles Street and the Western Avenue, was not included in the policy.

The plaintiffs, in order to show a notice and proof of loss, read in evidence a letter from them to the defendants' president, dated November 14th, 1842, in which the plaintiffs informed him, that it had " become necessary for the assured, under policy 8650, made by the Franklin Insurance Company, to give notice of a loss or damage to the premises insured, which happened on the evening of the 12th instant, and to request that they may be indemnified, according to the effect of that policy."

The defendants contended, that this letter alone was not sufficient proof of loss, within the meaning of the policy ; but the judge ruled otherwise, and no other evidence was introduced of any notice or proof of loss having been given to the defendants, before the commencement of the action.

Other points arose on the trial, and were ruled upon, which became immaterial, in consequence of the opinion of the court, with reference to the questions above stated.

The cause was argued at the March term, 1846, by *R. Fletcher & E. D. Sohier*, for the defendants, and by *S. Bartlett & W. Sohier*, for the plaintiffs.

The opinion of the court was delivered at the same term, by

DEWEY, J.   To what building does this policy attach ? Is it the most easterly house, situate at the corner of Charles Street and Western Avenue, or the adjoining westerly house, or both, or is the description of the building proposed to be insured, as it appears in the policy, so uncertain in its application, that for that cause the policy must fail altogether ?

In the policy itself, and on the face of it, there is nothing to create any ambiguity, as to the description of the building. But, upon proof of the circumstances, and the actual state of things, in reference to the two buildings, the ambiguity arises.

The plaintiff, however, insists, that, upon a proper reading of the description in the policy, it may well be taken to apply to the western building; and this would very clearly be so, if the words, "situate at the corner of Charles Street and the Western Avenue," are to be taken as referring to "the adjoining building" and not to the building insured.

But this, we think, cannot be maintained. The case does not seem to be one, in which any grammatical rule, referring the words "situate," &c., to the next antecedent, can properly be applied. Such a rule is not one of general application, especially to cases like the present, where the words are used in a continuous description of various distinct and independent circumstances, applicable to the building insured, and which, from their very nature, are distinct and independent descriptions. The object of each and all these different descriptions is to set forth fully all the essential circumstances relating to the property insured. Among these circumstances the most prominent is the location of the building to be insured. We might well expect, as a part of the description, contained in the policy, a statement of the location of the particular building, which was the subject of it; and, it is much more natural and probable, that the location of the building to be insured should be given, than the location of a building not insured, and which was only introduced incidentally, to disclose the manner of the connection of the building insured with an adjacent building.

We cannot doubt that a proper reading of the policy requires, that the words "situate at the corner of Charles Street and the Western Avenue" should be applied to the building insured, rather than to the adjoining building.

Having settled this point, we are then to look at the whole description, and see whether it can, upon any sound principle, apply to the western building. And in reference to this in-

quiry, it will be seen, that the recital in the policy, as we have just held, varies from the description which would embrace the western house, in the most material particular, namely, the house insured is described as situate at the corner of Charles Street and the Western Avenue, but that is the location of the eastern house, and not of the western. That part of the description, therefore, being inappropriate, the application of the policy to the western house must be shown by other parts of the same description.

We do not doubt the propriety of rejecting a particular description, which is clearly false, in order to give effect to other descriptive words, when such words are sufficient to define the object intended to be described. In such a case, the false description may be rejected as surplusage. But the difficulty here is, that we are called upon to reject that particular part of the description, which is the most leading. Again, if we reject this description, we have no other elements of description, sufficient to embrace any particular house as within the policy. Striking out the words " situate at the corner of Charles Street and the Western Avenue," we have no locality and no particular house insured. The matter stands thus as to the western house. Rejecting this particular in the description as false, and giving full force and effect to all the other parts of it, the description is then so substantially defective, that it cannot be held to apply to the particular house, which the plaintiff insists was insured. This view of the case precludes the plaintiff from recovering damages, for any loss which he may have sustained in the destruction of the western house by fire.

It was suggested, that the policy might be construed to embrace the whole block, that is to say, the two buildings, and thus avoid the difficulty in the variance of the description as to situation. But we think that this cannot have been the true intention of the policy; the description clearly referring to one building, and that a building "connected by doors with the adjoining building."

The next inquiry is, whether this policy must totally fail

for uncertainty in the description, or whether it may be held to attach to the eastern building, which, it was in evidence, had sustained some small damage by the fire. The fact, that the parties intended to cause a policy to be made as to one of these two buildings, will hardly be doubted; and, having decided that the western house was not covered by the policy, it might seem to result as a matter of course, that the policy attached to the eastern house. But such is not necessarily the consequence, as the description may be equally uncertain as to both. In such case, the policy must wholly fail. But the fact, that the policy was intended for the one house or the other, may have some influence; and if there be not only a preponderance of evidence, resulting from the description and the actual state of things, in favor of one building rather than the other, but sufficient evidence, after rejecting the false description, to identify the particular building, we may well conclude that such building is covered by the policy, and was designed to be so by the parties. In looking at the policy, with reference to its application to the eastern house, we find all the leading descriptions, and particularly that of location, to be directly applicable.

The only description, which is inapplicable, and which appears by the evidence not to be true, is the recital: "A cabinet maker's shop is in the building." This does not apply to the eastern house, and, if material, must of course be a fatal objection to the construction, which makes that house the subject of the policy. As before remarked, in reference to the description in the policy, as applicable to the western building, the rules of law fully authorize the rejection of any false description, if what remains be sufficient clearly to designate the object intended to be described. Now, in the present case, as to the eastern building, such will be the case, if the entire recital as to the cabinet maker's shop be rejected. There will still remain all the elements essential to a definite description, the location of the building, and every circumstance necessary to its identification.

Such being the case, and the circumstances being strong

to show that one of those two buildings was insured; and, for the reasons already stated, the western not being described in the policy; we are of opinion, that the recital, "A cabinet maker's shop is in the building," may be rejected as erroneous; and that the policy will then attach to the eastern building.

The only other point, which, in this view of the case, is necessary to be considered, is the sufficiency of the notice of the loss and damage. The notice was in very general terms, — conveying no intelligence as to the amount of damage, — containing no statement of the particular circumstances connected with the cause of the loss, — and making no demand of any specific sum of money as an indemnity.

The sufficiency of this notice is not to be determined solely by reference to general principles applicable to other policies, but in part also upon the peculiar provisions of this policy, or the stipulations which it contains regulating this subject. The provisions relative to notice of loss are very general, and are wholly contained in the following clauses: "And in case of any loss the same is to be paid without any deduction, in ninety days after proof thereof," — " And the assured agrees, that in case of any loss, or damage, the said company shall have the right to replace the articles lost or damaged with others of the same kind and equal goodness, at any time within ninety days after notice of the loss." It would have been entirely competent for the company, to have required a distinct specification of the damages claimed by reason of the loss, or other precise and minute particulars, but they have not done so.

The first of these provisions is probably inartificially expressed to carry out the object of it, as it provides that payment shall be made in ninety days " after proof" of the loss. This was probably copied from the specifications in marine policies, where certain preliminary proofs are required.

We think, considering the general terms in which notice is required by the provisions of the policy, and applying a principle of law, which is applicable in cases of a like char-

acter, that the notice may be regarded as sufficient. According to the principle of law referred to, when underwriters make no objection to a deficiency in the preliminary proofs, or to the notice given, but put their denial of liability upon other grounds, such conduct is a waiver of the objection of a defective notice. *Vos* v. *Robinson*, 9 Johns. 192. The principle of waiver is also recognized in the case of the *Ætna Ins. Co.* v. *Tyler*, 16 Wend. 401, where the court say: " The law is well settled in this state, that if there is a formal defect in the preliminary proofs required by the policy, and which could probably have been supplied, had any objection been made by the underwriters to the payment of the loss, on that ground; if the insurers do not call for the document, or make an objection on the ground of its imperfection, but put their refusal to pay distinctly on some other ground, the production of such further preliminary proof will be considered as waived; " good faith on the part of the underwriters requiring, in such a case, that if they mean to insist upon a mere formal defect of this kind in the preliminary proofs, they should apprize the insurer that they consider the same defective.

Cases of fire insurance seem, less than marine, to require particularity in the notice of loss. Losses by fire more usually fall under the inspection of the insurers' agents; and a general notice will be sufficient to enable the insurers seasonably to acquire a more minute knowledge of the loss, if such knowledge be desirable.

We put the decision, in the present case, however, upon the provisions of this policy, and the legal principle properly applicable to it, that no objection being taken to the form of the notice, and no further or more particular information being requested by the insurers, no objection can now be taken, upon that ground, to the plaintiff's right to recover.

The ruling, at the trial, on the first point, being now held erroneous, the verdict must be set aside, and a new trial granted.

The case was again tried at the March term, 1846, upon substantially the same facts, before *Wilde*, J., who ruled, in conformity with the foregoing opinion, that the policy applied only to the easterly building. The plaintiff then introduced evidence, to show that the breakfast room and kitchen in the spur or L communicated with the easterly building by doors; and, upon that and other evidence in the case, contended that the spur formed a part of the eastern structure. But the judge ruled otherwise, and a verdict was taken accordingly for the injury to the easterly building only. The case being reserved for the consideration of the whole court, the rulings were confirmed, and judgment entered on the verdict, at the present term.