JAMES G. BLAKE *vs.* EXCHANGE MUTUAL INSURANCE COMPANY OF PHILADELPHIA.

This clause in a policy of insurance against fire, " other insurance permitted without notice until required," applies to insurance already existing on the property, notwithstanding that the policy provides that " in case the assured shall have already any other insurance against loss by fire on the property hereby insured, not notified to this company and mentioned in or indorsed upon this policy," the policy shall be void and of no effect.

A policy of insurance on goods in " the brick building situate on Main Street in C., known as D. & Co.'s car factory," covers goods in a building erected as a wing against the rear wall of D. & Co.'s car factory on Main Street, with an opening through the wall of less than three feet square, usually closed by an iron door, if both wing and main building are used for manufacturing cars and known as " D. & Co.'s car factory."

If, after the preliminary proofs of a loss by fire under a policy of insurance, the officers of

an insurance company visit the premises and converse with the insured and make no ref-
erence to the preliminary proofs, or raise any objection to them, while any defect therein
may be remedied, and refuse to pay on other and distinct grounds, the insurance company
will be estopped to set up any defect in the preliminary proof, although the conditions
made part of the policy give explicit directions about proofs of loss, and the policy
provides that no condition, stipulation, covenant or clause in the policy shall be altered,
annulled or waived, except by writing indorsed on or annexed to the policy and signed
by the president or secretary.

A policy of insurance expressed to be issued on property described in a certain application,
" which is hereby declared to be a part of this policy and a warranty on the part of the "
assured, and to be " made and accepted in reference to the written and printed applica-
tion whereon it is issued," is not void, if there was no written application ever made;
nor if issued upon a defective application, if that application was correct so far as it
went.

Where property covered by several policies of insurance is destroyed, the proportion of its
value to be paid by one underwriter is that which the amount of his policy bears to the
amount of all the insurance thereon; although some of the policies cover other property
in addition to this.

ACTION OF CONTRACT upon a policy of insurance against fire,
made to the plaintiff for one year from the 11th of October
1853, " on the following property, as described in application
and survey No. 726, which is hereby declared to be a part of
this policy and a warranty on the part of the aforesaid, namely,
$1500 on stock of lumber, consisting of black walnut, mahog-
any and other wood, in plank, board and joist, contained in the
second and attic stories of the brick building situate on Main
Street in Cambridgeport, Mass., known as Davenport & Co.'s
car factory, and in the yard and shed attached to the same;
other insurance permitted without notice until required"; any
loss or damage " to be paid within ninety days after notice,
proof and 'adjustment thereof in conformity to the conditions
annexed to this policy "; and provided, that " in case the assured
shall have already any other insurance against loss by fire on the
property hereby insured, not notified to this company and men-
tioned in or indorsed upon this policy, then this insurance shall be
void and of no effect; and the assured hereby covenants and en-
gages that the representation given in the application for this
insurance is a warranty on the part of the insured, and contains
a just, full and true exposition of all the facts and circumstances
in regard to the condition, situation and value of the property
insured, and that if any fact or circumstance shall not have been

fairly represented, or if the said assured or his assigns shall hereafter make any other insurance on the same property and shall not give immediate notice thereof to the secretary and have the same indorsed on this instrument, or otherwise acknowledged by him in writing, then this policy shall cease and be of no effect." "It is also declared that this policy is made and accepted in reference to the written and printed application whereon it is issued, and also to the conditions hereto annexed, which are hereby made a part of this policy, and to be used and resorted to in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for. And it is also agreed and declared by the parties aforesaid, that no condition, stipulation, covenant or clause hereinbefore contained shall be altered, annulled or waived, or any clause added to these presents, except by writing indorsed hereon or annexed hereto by the president or secretary, with their signatures affixed thereto."

On the third page of the policy were printed "conditions of insurance," the first of which provided that "applications for insurance on property shall specify the construction and material of the building to be insured, or containing the property to be insured; by whom occupied, whether as a private dwelling or how otherwise; its situation with regard to contiguous buildings, and their constructions or materials; whether any manufacturing is carried on within or about it; and such description or specification shall be deemed a part of this policy, and a warranty on the part of the insured"; and the twelfth condition required persons sustaining loss by fire and claiming indemnity under this policy to give notice and proofs of loss as therein particularly directed.

At the trial in the superior court of Suffolk, at March term 1857, before *Nash*, J., the plaintiff testified that when this policy was issued he had three other policies of insurance; one from the Mechanics' Insurance Company, for $1500, on the same property as this, and two from the Harmony and Lafarge Insurance Companies, each for $2000, on the same property and also on manufactured stock. The judge ruled that the clause writ-

ten in the policy, "other insurance permitted without notice until required," embraced existing as well as future insurance on the same property.

The plaintiff introduced evidence tending to show that originally a long brick building stood lengthwise by Main Street in Cambridgeport, and was used by Davenport & Co. as a car factory; that two wings, one at each end, were built against its back wall, which was not taken down, but was the common wall of the main building and the wings; that the property insured was in the east wing, which communicated with the main building by an opening, having an iron door, three by two and a half feet, three feet above the floor, and constantly kept shut; and that the lower story of this wing and the other wing were used by Davenport & Co. for part of the work of their car factory, and a part of the plaintiff's work was done in the main building. The judge, against the defendants' objection, allowed the plaintiff to show, as matter of local designation, what structure was named and known as Davenport & Co.'s car factory; and instructed the jury, that if the wings and main building were so connected by a wall and door, and were all used in the business of manufacturing cars, and part of the wing in which the plaintiff's property was contained at the time of the fire cars in the process of manufacture, and the motive power of the whole structure came from one source, and the front and wings, as a whole, were known as "Davenport & Co.'s car factory," then, notwithstanding the separating wall, small opening for communication, distinct roofs, distinct entrances, and the fact that the wings did not touch Main Street, the plaintiff's property, if in the wing, was "in the brick building situate on Main Street, known as Davenport & Co.'s car factory," and the description in the policy was correct.

The plaintiff proved that the property was destroyed by fire on the 21st of January, 1856, and put in evidence certain notices and preliminary proofs sent by him to the defendants, which the judge ruled were insufficient to comply with the terms of the policy. After the introduction of evidence tending to prove the facts assumed in the following instructions, the judge

instructed the jury, that the preliminary proofs could be waived or the defendants estopped to avail themselves of defects in them otherwise than in writing indorsed on or annexed to the policy; that if the by-laws and conditions of insurance required certain preliminary proofs and notices to be given in a certain manner, and with certain particulars and details, and certain preliminary proofs and notices were given, not containing all the formal requisites, and, after receiving such proofs and notices, the defendants' president and secretary examined the 'premises, and had interviews with the plaintiff before the expiration of the time for giving said notices, and neither they then, nor the defendants afterwards, made any objection to the form or sufficiency of the preliminary proofs while any defects therein might have been remedied, and put their refusal to pay on other and distinct grounds, then such conduct might be considered a waiver of any defects in the preliminary proofs, or so far an estoppel that the defendants should not be allowed to avail themselves thereof, notwithstanding the provisions of the policy.

The defendants, upon notice from the plaintiff to produce any written application for the insurance in question, which might be in their possession, produced a memorandum made by the defendants' agent, to whom the plaintiff had applied for insurance, as to insurance being wanted. The plaintiff testified that he had no recollection of having signed or authorized any one to sign any written application or statement; and declined to put in this memorandum; and offered no further evidence that there was no application, or that he complied with his statements in an application. The defendants requested the judge to rule that inasmuch as the policy referred to and specified an application, and made it a part of the policy and a warranty on the part of the assured, it was necessary for the plaintiff, in order to recover, to put such application in evidence, and offer some evidence of compliance with the warranties therein contained, and the plaintiff, having failed to do so, could not recover; and also that if no application was ever filed in accordance with the terms of the policy, the policy was void and of no effect. But

the judge declined to order a nonsuit; and ruled that the plain-
tiff must prove literal compliance with all warranties, or stip-
ulations made warranties, appearing in the case; but that the
provision for an application in writing was a provision for the
benefit of the defendants, which they might waive and issue a
policy without an application; and that the contract of insur-
ance was not necessarily void, although there was no application,
notwithstanding the reference to one in the policy. The defend-
ants then, not waiving any exception to this ruling, put in evi-
dence the memorandum sent to them, and introduced evidence
tending to show that it did not correctly and fully describe the
property, and that its warranties were not complied with; and
the judge instructed the jury that if this paper was forwarded
by the plaintiff's agent as ground or memorandum upon which
the policy was to issue, and did issue, it was substantially an
application, so that its statements, representations and descrip-
tions must be literally complied with.

The defendants contended that the plaintiff could recover
only that proportion of the value of the property insured which
the amount of their policy bore to the whole amount of insur-
ance on the property. And the judge so ruled as to all the
insurance except the policies of the Harmony and Lafarge In-
surance Companies; and, as to them, ruled that they could not
be included in making the computation, because they covered
other property than that included in the defendants' policy.
The jury returned a verdict for the plaintiff accordingly, and the
defendants alleged exceptions.

*C. T. Russell,* for the defendants.

*R. H. Dana, Jr. & H. W. Muzzey,* for the plaintiff.

THOMAS, J. 1. That the clause of the policy, " other insurance
permitted without notice until required," relates to and covers
insurance existing at the date of the policy, as well as insurance
subsequently effected, is settled by the recent case of *Kimball* v.
*Howard Fire Ins. Co.* 8 Gray, 33.

2. The evidence to show, as matter of fact, what structure
was known as the Davenport & Co. car factory, was clearly
competent. *White* v. *Mutual Fire Assurance Co.* 8 Gray, 566

And the construction given to the policy by the presiding judge, in the light of the extrinsic evidence, was correct.

3. The question as to the waiver of any defects in the plaintiff's notice and proofs of loss is one of more difficulty. There can be no doubt that the conduct of the defendants would amount to a waiver, except for the last clause in the policy, by which it is " agreed and declared by the parties aforesaid, that no condition, stipulation, covenant or clause hereinbefore contained shall be altered, annulled or waived, or any clause added to these presents, except by writing indorsed hereon or annexed hereto by the president or secretary, with their signatures affixed thereto." There is a previous provision that in case of loss the money is " to be paid within ninety days after notice, proof and adjustment thereof in conformity to the conditions annexed to the policy." The provisions for notice and proofs of loss are contained in the twelfth of the by-laws. The entire by-laws are printed under the heading " conditions of insurance." The policy is declared to be made and accepted in reference to the conditions thereto annexed, which are made part of the policy. How far the provisions as to the form of the notice and proofs of loss, after a valid contract has been made and a loss taken place under it, can be regarded as conditions of the contract itself, it is not necessary to determine, nor whether their being classed under the designation of conditions of insurance could change the nature and purpose of the stipulations themselves ; for it seems to us that the question is not as to the provisions of the contract, but as to the performance of the provisions. The plaintiff is not seeking to set up a contract from which a material provision has been omitted by the oral consent of the officers of the company. The policy contained the usual provisions as to notice and proofs of loss. Upon the happening of the loss, the plaintiff sent to the defendants certain notices and proofs in pursuance of the requisition of the by-laws upon the subject. If the notices were defective, good faith on the part of the underwriters required them to give notice to the insured. If they failed to do so, if they proceeded to negotiate with the plaintiff without adverting to the defects, if, still further, they put their refusal to

pay on other and distinct grounds, they are, upon familiar prin
ciples of law, estopped to set up and rely upon the defective
notices; the law assumes that the notices were correct, and will
not listen to the defendant when he seeks to show the contrary.
*Vos* v. *Robinson*, 9 Johns. 192. *Ætna Fire Ins. Co.* v. *Tyler*, 16
Wend. 401. *Heath* v. *Franklin Ins. Co.* 1 Cush. 257. *Clark* v.
*New England Mutual Fire Ins. Co.* 6 Cush. 342. If the defend-
ant relied upon any exemption from the obligations of the policy,
or any modification of them by the agents or officers of the
company, or any addition, he must show such exemption, modi-
fication or addition, by indorsement upon the policy. But the
question whether a stipulation as to notice and proofs of loss
has been fulfilled, or whether the defendant is in a condition to
be heard upon that question, must be tested by the ordinary
rules of law. There is a time when objections in matters of
form must be taken. If they are not then made, they never can
be made. The law does not say the procedure was perfect,
but that the question is not open. The adherence to and liberal
application of this principle are necessary to the maintenance of
good faith and fair dealing in judicial proceedings.

4. The questions made as to the application are of less diffi-
culty. There is nothing in the policy or the conditions attached to
it, which makes an application in writing by the plaintiff essen-
tial to the validity of the contract. If the underwriters chose
to issue a policy without such application, or with an applica-
tion defective but true as far as it went, they must be held to
have waived the want of the application or its defects. *Hall* v.
*People's Ins. Co.* 6 Gray, 185. *Liberty Hall Association* v. *Housa-
tonic Mutual Fire Ins. Co.* 7 Gray, 261.

5. The court erred in instructing the jury that no abatement
of the amount to be recovered of the defendants could be made
on account of the Harmony and Lafarge policies, because those
policies covered other property besides that covered by the de-
fendants' policy. We think those policies, though covering
manufactured as well as unmanufactured stock, must sustain
their proportion of the loss. The rule of adjustment will be
this: Ascertain the stock covered by the policies at the time of

the loss, manufactured and unmanufactured. Ascertain the amount of the manufactured and of the unmanufactured separately. Then as the value of the entire stock is to the sum insured, so would be the amount of the unmanufactured to the result sought. For example: The entire stock is, say $2100. Of this the manufactured is $1500; the unmanufactured $600. The amount insured on both is $700. As $2100 is to $700, so is 600 to the answer.

If the parties cannot agree upon the amount, or upon an assessor to fix it, the case must go to a new trial, limited to the question of damages only. *Exceptions sustained.*