POST and DOWDING *vs.* THE ÆTNA INSURANCE COMPANY.

Where an agreement is made by the agent of an insurance company, for the renewal of a policy, nothing being said respecting the amount to be charged, the insured has a right to suppose the renewal is to be at the rate formerly paid.

Where an insurance agent is authorized under the previous dealings between him and the insured to charge the premium on a renewal, in account, or to resort to an implied agreement for its payment, he may make a renewal on the implied promise to pay, as well as upon actual payment of the premium; notwithstanding a provision in the policy that no insurance shall be considered binding until the actual payment of the premium.

Although a policy, and the certificates of renewal, declare that they shall not be valid until countersigned by the agent, this will not exclude the power of the agent to bind the insurers by a parol agreement to renew.

So far as the exercise of his authority as agent is involved, it makes no difference that at the time of renewing a policy the period for which the policy was issued had expired.

The possession and use, by an agent, of an insurance company's certificates of renewal, together with the exercise of that authority in other instances, indicate that the power of renewing and continuing insurances has been conferred upon such agent.

If there is nothing in the case showing the agent to be confined or restricted, in the use of that authority, to cases where the policy renewed is still valid as an insurance, those who deal with him are authorized to presume that no such restriction or qualification exists.

Where an individual is authorized to accept risks, to agree upon and settle the terms of insurance, and to carry them into effect by issuing and renewing policies, on behalf of an insurance company, this is sufficient to constitute him a general agent for the company, at the place where his business as such agent is transacted; and he can as well exercise his authority of renewing and continuing a policy which has already expired, as by making and issuing a new one.

Post *v.* Ætna Insurance Company.

An agreement by parol to renew a policy does not, of itself, renew the insurance. But it imposes upon the agent the duty of doing whatever is necessary to effect a renewal of it.

An agreement of that nature, either express or implied, must necessarily precede the renewal of any insurance. A similar one must be made, to ascertain and determine the subject, term and rate of insurance, in all cases where policies are issued.

They are directly and necessarily within the employment and authority of the agent, whose business could not be carried on without the power to enter into them. And the law does not require them to be in writing, in order to become obligatory on the parties.

Under the common law, a promise, for a valuable consideration, to make a policy of insurance, is no more required to be in writing than a promise to execute and deliver a bond, bill of exchange or negotiable note; and such is the general doctrine of the law, when no statutory enactment requires the contract to be in writing, to render it valid.

Where a parol agreement is made, by an agent, to renew a policy, the action should be in equity for its specific performance, or at law for the breach occasioned by the failure to renew the insurance. Either form can be adopted, with equal propriety.

Where the action is for a specific peformance, the court considers the agreement which the party was under a legal obligation to make, the same as if made, and decrees the payment of the money which would have been payable under the consummated agreement.

Where the action is at law, for the damages arising out of the breach of the agreement, the relief obtained is the same.

Where service of notice and proof of loss are by the terms of the policy a condition precedent to the insurer's liability, such condition is not affected, in legal contemplation, by the fact that its non-performance was unproductive of injury.

Such a condition may be partially or wholly waived by the insurers. Such waiver may be express, or it may be inferred from circumstances.

Mere defects in the proofs served have often been held waived by an omission to insist specifically upon them, when it was in the power of the party to correct and supply the defects. *Per* DANIELS, J.

If the underwriter intends to insist upon defects in the proof, he must notify the insured of that intention in time to afford him an opportunity to correct them.

Conditions precedent are waived by such conduct on the part of the party entitled to insist upon them as is inconsistent with the purpose to require the performance of them. And contracts of insurance constitute no exception to the rule.

Thus where the objection to paying a claim under a policy was not that the proofs were not served, but that there was no legal liability on the part of the underwriters, for the payment of the loss, their agent insisting that

Post *v.* Ætna Insurance Company.

43 353
59h 190

the policy had not been renewed, and that no agreement for its renewal had been entered into; that insurance companies were not benevolent societies, &c.; *Held* that if the insurers had intended to resist payment on account of the failure to serve the preliminary proofs, the agent should have so informed the insured; it being still in time to make the proofs; and that failing to do so, he must be deemed to have waived any defect in the proofs.

Where the object of a release, executed by the insured and indorsed upon the back of the policy on settling the same with the company, seems to have been to secure merely the discharge of the debt mentioned in the release, and the surrender and cancellation of the policy creating it, and nothing beyond that, the general terms employed should be limited to that object, and not be so construed as to extend the release to claims arising under other policies.

THIS action was brought upon a policy of insurance issued by the defendant, by which it insured the plaintiff against loss and damage by fire, to the amount of one thousand dollars, upon their stock of flour, mill-feed and grain, contained in a mill occupied by them, near Attica in Wyoming county. The mill, with all its contents, was destroyed by fire on the 19th of April, 1863. The defendant had issued three other policies of insurance to the plaintiffs, in part upon the mill, and the residue upon the stock. One of those policies had been twice renewed, by certificates for that purpose attached to the policy. The policies and certificates were all issued by the defendant's agent at Attica, and each contained a statement that it was not valid until countersigned by such agent. On the 23d of April, 1863, proofs of loss were made and served under all the policies except the one in suit. The defendant claimed that the policy in suit had expired before the fire, and that it was not liable under it. The defendant, on the 23d of April, 1863, paid the losses arising upon the other policies and took a release upon each of them. Each release was in substance the same, and contained a statement that the amount received was in full satisfaction of all loss or damage occasioned by the fire which occurred on the 18th of April, 1863,

and said written policy was thereby surrendered and can celed. On the 1st of July, following, proofs of loss were served on account of the policy in question. The plaintiffs gave evidence tending to prove a verbal agreement to renew the policy in question for the period of sixty days, which included the time when the loss occurred. The defendant claimed, and insisted, that the evidence was too indefinite to establish an agreement to renew the policy; that it could only be renewed by an instrument in writing; and that the agreement, if made, was not binding on the defendant. Also that it was discharged from payment of the loss in question by delay in serving the proofs of loss, and by releases given on the other policies. The court submitted the evidence tending to prove the agreement to renew the policy to the jury, and overruled the other objections of the defendant; to which it duly excepted. The jury found for the plaintiffs for the amount of the policy, and judgment was stayed until the decision of the general term upon the exceptions taken.

*John Ganson,* for the appellant. There are three questions presented in this case, on this appeal. The first is, whether the plaintiffs have complied with that condition in the policy which requires that "all persons having a *claim* under a policy shall give *immediate notice thereof,* and render a particular account *thereof,* with an affidavit stating the time and circumstances of the fire, &c." The second is, whether a release executed on the 23d of April, 1863, did not discharge the claim, if any existed. The third question · is, whether the agent had authority to make a valid parol agreement of extension. As to the first point, the facts are as follows: The fire occurred on the night of the 18th of April, 1863. The claim was made under the policy in question on the 1st day of July, 1863, being seventy-three days after the loss occurred. The plaintiffs both swear that they did not learn 'till two or three weeks after the fire that they had a claim under the policy in question; that was about

the first of May. They allowed two months to elapse after that before they made a claim. The defendant had a prior policy of insurance on the same stock, of one thousand dollars, under which they made a claim immediately. This claim was paid on the 23d of April, 1863, five days after the fire occurred. The plaintiffs then signed a release, under seal, in these words:

"Received from the Ætna Insurance Company, of Hartford, Connecticut, through E. J. Basset, general agent, one thousand dollars, less interest, the same being in full satisfaction of all loss or damage by fire which occurred on the 18th of April, 1863, and said within policy 603 is hereby surrendered and canceled.

In testimony whereof we have hereunto set our hands and seals this 23d day of April, 1863, at Attica, N. Y.

In presence of        DANIEL POST,   [L. S.]
C. B. Benedict.         F. C. DOWDING. [L. S.]"

I. The plaintiffs were required, by the policy in question, if they had any *claim* under it to give immediate notice *thereof*, and render a particular account of such claim, with an affidavit.

II. They permitted seventy-three days to elapse before they gave notice to the defendant of their *claim*, and before they served an affidavit giving an account of it.

III. No sufficient excuse is shown for the delay. The plaintiffs testify that they advised with counsel within two or three weeks after the fire occurred, and they permitted two months to elapse after that before they made any claim of the defendant. 1. Where a policy required "immediate notice of *loss*," and the notice was not given until *eleven* days after the fire, no sufficient excuse being shown for the delay, it was held, in Pennsylvania, to be too late, and not a compliance with the policy. (*Trask* v. *State Fire and Marine Ins. Co.*, 29 *Penn. Rep.* 198.) The declaration, in an action on a policy of insurance, alleged that the buildings insured

Post *v.* Ætna Insurance Company.

had been consumed on the 23d of February, 1837, and that the assured gave notice thereof to the company on the 2d of April following. The court held, on demurrer, that this was not a compliance with the condition of the policy requiring notice of the loss to be given forthwith. That "forthwith" meant immediately, without delay. That a notice given thirty-eight days after the fire was neither a literal, nor a substantial compliance with the condition. (*Inman* v. *Western Fire Ins. Co.*, 12 *Wend.* 452.) Where a policy provided "that persons sustaining loss or damage by fire shall forthwith give notice thereof, in writing, to the company, &c.," it was held in equity, that a neglect to give notice of a loss, until more than four months afterwards, was fatal to the claim. (*McEvers* v. *Lawrence*, 1 *Hoff.* 171.) 2. This provision is a condition precedent to the right of recovery, and a compliance with it must be averred and proven. (*Mason* v. *Harvey*, 20 *Law and Eq. Rep.* 541. *Inman* v. *Western Fire Ins. Co.*, *supra.*) 3. There being no dispute as to the facts, the point made presents a question of law. This is so where the requirement is to give notice with "reasonable diligence." (*Mellen* v. *The Hamilton Fire Ins. Co.*, 17 *N. Y. Rep.* 609.) 4. The plaintiffs had another policy of insurance issued by the defendant, on the identical stock mentioned in the policy in question. The general agent of the defendant came to them to adjust the loss and damage they had sustained on that stock by the fire. The plaintiffs, under seal, *agreed* to receive one thousand dollars, less the interest, "in full satisfaction of *all loss* or *damage* sustained by them on the stock by the fire." This was after the dispute between the plaintiffs and Mr. Benedict as to any renewal of the policy in question, and after Mr. Benedict referred Mr. Post "to Mr. Bassett as the general agent who had the control of the entire matter." The release, under these circumstances, is conclusive between these parties, and can not be explained or controlled by oral evidence. (*Piersons* v. *Hooker*, 3 *John.* 68. *Vedder* v

Post *v.* Ætna Insurance Company.

*Vedder,* 1 *Denio,* 257. *Palmerton* v. *Huxford,* 4 *id.* 166. *Egleston* v. *Knickerbacker,* 6 *Barb.* 458.) 5. The court erred in deciding that the agent could renew the policy in question by an oral agreement. The policy itself is in writing, and declares, on its face, that it *"shall not be valid until countersigned by the duly authorized agent of the company at Attica."* The certificates of renewal declare that they are *"not valid unless countersigned by C. B. Benedict."* The forms are furnished by the defendant, signed by the president and secretary, and give notice to the party taking the insurance what is requisite to make the agreement valid. The plaintiffs, as holders of policies and of certificates of insurance, had notice of this limitation and requirement. (*Spitzer* v. *St. Marks Ins. Co.,* 6 *Duer,* 6.) The question is as to the authority of the agent to make a parol extension, and not as to the power of the defendant to make a valid parol agreement to insure.

*B. H. Williams* and *A. P. Nichols,* for the respondent. I. A parol contract to renew a policy of insurance is valid. (*See Trustees of First Baptist Church* v. *Brooklyn Fire Ins. Co.,* 19 *N. Y. Rep.* 305; *Com. Mut. Ins. Co.* v. *Union Mut. Ins. Co.,* 19 *How.* [*U. S. Sup. Ct.*] 319; *McCullough* v. *Eagle Ins. Co.,* 1 *Pick.* 280; *Hamilton* v. *Lycoming Ins. Co.,* 5 *Barr,* 342; *Delaware Ins. Co.* v. *Hogan,* 2 *Wash. C. C. R.* 4; *Perkins* v. *Washington Ins. Co.,* 4 *Cowen,* 645; *Constant* v. *Alleghany Ins. Co.,* 3 *Wallace, jr., reported in Am. Law Reg. vol. I, N. S.* 116.) The testimony clearly shows a parol agreement to renew the policy of insurance, and a parol renewal of the same, and abundantly sustains the finding of the jury that the policy in question was renewed.

II. The plaintiffs gave immediate notice of their claim to Benedict, who was agent for the company at Attica, and to Basset, who was the general agent of the defendant. The defendant was a foreign corporation and represented at Attica

by Benedict, and, so far as the payment of claims was con-
cerned, by Bassett, and the jury have found that notice to
Benedict and Bassett was notice to the defendant. (*See Sex-
ton* v. *Montgomery Mut. Ins. Co.*, 9 *Barb.* 191.)

III. The defendant, immediately after the fire, denied that
the policy of insurance was in force, and refused to pay the
claim in question on the ground that the policy was never
renewed. By taking this position they waived service of
notice of loss and of proofs of loss. (*See Francis* v. *Ocean
Ins. Co.*, 6 *Cowen*, 404; *Boynton* v. *Clinton Mut. Ins. Co.*,
16 *Barb.* 254; *O'Niel* v. *Buffalo Fire Ins. Co.*, 3 *Comst.*
122; *Taylor* v. *Merchants' Fire Ins. Co.*, 9 *How.* [*U. S.
Sup. Ct.*] 398; *Vos* v. *Robinson*, 9 *John.* 192; *McMasters*
v. *Westchester Mut. Ins. Co.*, 25 *Wend.* 379; *Rogers* v.
*Traders' Ins. Co.*, 6 *Paige*, 583; *Clark* v. *The New Eng.
Mut. Fire Ins. Co.*, 6 *Cush.* 342; *Underhill* v. *The Agawam
Mut. Fire Ins. Co.*, *Id.* 440; *Bumstead* v. *Dividend Mut.
Ins. Co.*, 2 *Kern.* 81.)

IV. If there was any delay in giving notice to the company
of the loss, or in furnishing proofs of loss, beyond that con-
templated by the policy, it was caused by the acts and decla-
rations of the defendant's agent, who assumed to act for the
plaintiffs, and for any such delay the plaintiffs are not to be
prejudiced. (*See Bodle* v. *Chenango County Mut. Ins. Co.*,
2 *Comst.* 53; *Cornell* v. *Le Roy et al.* 9 *Wend.* 163.)

V. The receipts signed by the plaintiffs, and introduced in
evidence by the defendant, are only receipts for the amounts
actually paid, and can be explained by parol evidence. They
should be read in connection with the instrument on which
they are indorsed. (*See Ensign* v. *Webster*, 1 *John. Cas.*
145; *House* v. *Low*, 2 *John.* 379; *Tobey* v. *Barber*, 5 *id.* 68;
*Thomas* v. *McDaniel*, 14 *id.* 185; *Jackson* v. *Stackhouse*,
1 *Cowen*, 122.) Besides the receipts are for loss by fire
which occurred on the 18th of April, and the proof shows,
and the jury found, that the loss in question occurred on
the 19th of April.

Post *v.* Ætna Insurance Company.

DANIELS, J. The defendant insisted, upon the trial, that the testimony given on behalf of the plaintiffs did not establish an agreement to renew the policy in question. That it did not show the time for which the renewal was to be made, the rate of premium to be paid, or the payment of the premium, and excepted to the refusal of the court so to charge. There is no exception otherwise taken upon this part of the case, to the manner in which it was submitted to the jury, and that must now be assumed to have been properly done. And as the jury found a verdict for the plaintiffs, they are entitled to the benefit of all reasonable intendments in their favor, under the evidence. The question then arises whether, upon a favorable consideration of the evidence, it sufficiently tends to prove an agreement to warrant its submission to the jury.

The policy in suit was issued on or about the 24th of January, 1863, by the defendant's agent at Attica, and by its terms the defendant insured the plaintiffs against loss and damages by fire, to the amount of $1000 upon the stock of flour, mill feed and grain, in their mill near Attica, for the period of sixty days. The insurance, by its terms, expired on the 24th of the following March at noon. Other insurances had been made by the defendant, through the same agent, upon the mill, and the stock contained in it; and three of the policies continued in force to and including the time of the fire. One of these had been twice renewed by certificates issued for that purpose by the same agent. The evidence given to prove an agreement for the renewal of the policy now in controversy tends to show that one of the plaintiffs had an interview with the agent on the 27th of February, concerning the renewal of the insurance under it. In the course of the interview the agent inquired whether the plaintiffs desired to have this and another insurance in another company, on the same property expiring at the same time, renewed. The reply was that they wanted them renewed for a further time of sixty days, and in the

evening of the 24th of March, the agent was asked by the same plaintiff whether he had renewed these policies. The agent inquired when they expired, and was informed that they expired that day. He then replied that he would go right over and do it. This conversation occurred away from the agent's place of business, in one of the neighboring stores of the village. The original insurance was made for the premium of sixty cents for $100. Nothing was said respecting the amount to be charged for the renewal, but the plaintiffs had reason to suppose it was to be at the same rate for which the insurance had first been taken; for the testimony tends to show that the agent had previously renewed insurances for the plaintiff in the same way, and without the renewal being put upon the policies, and that on one occasion he renewed policies upon the mill, without any application whatever. The agent was also a banker, and the plaintiffs kept their bank account with him, and he charged the plaintiffs for insurance made upon the property, in that account, without a check. If these statements were true— and the court could not do otherwise than submit them to the jury, although they were denied and contradicted by the evidence on the part of the defense—an agreement was made to renew the insurance. The time for which a renewal was desired was distinctly stated and assented to. And as nothing transpired indicating a different understanding, or any reason for changing the rate of insurance, the reasonable inference would be, that it was to be renewed on the same terms in that respect as the risk was originally taken upon. Evidence was given tending to show that the agent had previously insured the plaintiff's property and charged the premium in their bank account which was kept with him. The jury must have found that to have been the case, and no reason existed for supposing that a different course was contemplated in this instance. The agent by his agreement assumed to do whatever was necessary to renew the insurance, upon the understanding that the details were sufficiently under-

stood between himself and the plaintiffs. He was authorized under their previous dealings to charge the premium in their account, or to resort to their implied agreement for its payment, and notwithstanding the terms of the policy, could make the renewal upon their implied promise to pay, as well as upon actual payment. (*Sheldon* v. *Atlantic Ins. Co.* 26 *N. Y. Rep.* 460.)

When this agreement was made, however, the policy had expired, and as the agreement was unwritten, the defendant claims that it was not binding upon it. The court ruled otherwise, and the defendant excepted ; no evidence other than the form of the policy, and of the certificates used in making renewals, was given showing that the exercise of the agent's authority depended upon the manner in which he made contracts of insurance. The policy and certificates declared that they should not be valid until countersigned by the agent. But that does not exclude his power to bind the defendant by the agreement in question. So far as the exercise of his authority as agent is involved, it can make no difference that the time had expired for which the policy was issued. The possession and use of the defendant's certificates of renewal, together with the exercise of that authority in other instances, indicate that the power of renewing and continuing insurances had been conferred upon this agent. There is nothing in the case showing him to be confined or restricted, in the use of it, to the cases where the policy renewed was still valid as an insurance ; and those who dealt with him were entitled to presume that no such restriction or qualification existed. He was authorized to accept risks, to agree upon and settle the terms of their insurance, and to carry them into effect by issuing and renewing policies on behalf of the defendant. This was sufficient to constitute him a general agent for the defendant at the place where the business of the agent was transacted, (*Lightbody* v. *North Am. Ins. Co.* 23 *Wend.* 22 ; *McEwen* v. *Montgomery Mutual Ins. Co.* 5 *Hill*, 105 ;) and he could as well exercise his

authority by renewing and continuing a policy which had already expired as by making and issuing a new one.

The agreement which, upon the evidence, the jury must have found existed in this case, did not of itself renew the insurance. But it imposed upon the defendant's agent the duty of doing whatever was necessary to effect a renewal of it. An agreement of that nature, either express or implied, must necessarily precede the renewal of any insurance, and a similar one is made to ascertain and determine the subject, term and rate of insurance in all cases where policies are issued. They are directly and necesssarily within the employment and authority of the agent, whose business could not be carried on without the power to enter into them, and the law does not require them to be in writing in order to become obligatory on the parties. They have often been the subject of judicial controversies, and always held binding on the principal, when fairly established by proof.

A recent writer on the law of insurance states the result of these authorities in the following manner: In commercial towns, actions on mere agreements to insure, whether against fire or the perils of the sea, are not uncommon, and they are always sustained whenever it appears that the terms of the agreement have been fully settled by the concurrent assent of the parties, so that nothing remains to be done, but to deliver the policy. The contract is executed in the first instance, and completed when the policy is drawn up. (*Angell on Life and Fire Insurance,* § 33.) The same principle was maintained and carried into effect in the case of *The Commercial Marine Ins. Co.* v. *The Union Ins. Co.* (19 *How. U. S. Rep.* 321.) There it was held by the supreme court of the United States, that under the common law a promise for a valuable consideration to make a policy of insurance is no more required to be in writing than a promise to execute and deliver a bond, bill of exchange, or negotiable note; and such is the general doctrine of the law, when no statutory enactment requires the contract to be in writing

to render it valid. (*Pratt* v. *Hudson River Rail Road Co.*, 21 *N. Y. Rep.* 305.) It is not contended in this case that the contract of the agent to renew an insurance previously made by him in his capacity of agent is affected by any statutory provision of that character. The principle maintained in the case of the *Marine Ins. Co.* v. *Union Ins. Co.* (19 *How.* 321,) is substantially affirmed by the court of appeals in this state, in the case of *Trustees &c.* v. *Brooklyn Fire Ins. Co.* (19 *N. Y. Rep.* 305.) In that case there was an unwritten agreement to continue the policy from year to year, until notice to the contrary should be given, which was held binding upon the company, notwithstanding the policy declared that it might be continued provided the premium therefor was paid, and indorsed on the policy, or a receipt given for it, and that no insurance whatever, original or continued, should be considered binding until the actual payment of the premium. If the agent had properly filled up and countersigned the certificate, as he should have done under the agreement, the defendant would have been bound by it without an actual delivery of it to the plaintiffs. He would have held it from that time as their trustee, or agent; (*Angell on Life and Fire Ins.* §§ 31, 32; *Kohne* v. *Ins. Co. of North Am.* 1 *Wash. C. C. R.* 93;) and in case of loss, their remedy would have been perfect upon it, as upon an insurance actually effected.

But upon the agreement which was made in this case, the action should be for its specific performance in equity, or at law, for the breach occasioned by the failure to renew the insurance. Either form could be adopted with equal propriety. (*Taylor* v. *Merchants' Ins. Co.* 9 *How. U. S. Rep.* 405; 19 *id.* 321, *supra.*) The distinction between the forms of action, in a case like this, is rather more fanciful than real. For where the action is for a specific performance, the court considers the agreement which the party was under a legal obligation to have made, the same as made, and decrees the payment of the money, which would have been payable

under the consummated agreement, (*Perkins* v. *Washington Ins. Co.* 4 *Cowen,* 645 ;) and where the action is at law for the damages arising out of the breach of the agreement, the relief recovered is the same. (*Pratt* v. *Hudson River R. R. Co.,* 21 *N. Y. Rep.* 314.)

The complaint in this case is sufficiently broad to comprehend the action, as one for the breach of the agreement to renew the insurance. But if not, the variance would be immaterial. (21 *N. Y. Rep. supra.*) So far as the contract is involved the defendant was liable, and the liability may be properly enforced in this form of action. But the defendant insists that even if the agreement to renew the policy was binding upon it, no recovery can be had, on account of the delay in serving the proofs of loss. The policy contained the provision that persons having a claim under it should give immediate notice thereof, and render a particular account thereof, with an affidavit stating the time and circumstances of the fire, the whole value and ownership of the property insured, the amount of the loss, or damage &c. ; and until such proofs are rendered the loss shall not become payable. By its terms losses are payable within sixty days after the due proof of the amount. Unless the delay in serving the proofs of the loss has been reasonably excused or waived by the defendant, this action can not be maintained. (*Inman* v. *The Western Fire Ins. Co.* 12 *Wend.* 452.) Upon the trial of the cause the plaintiff endeavored to excuse the delay in this respect, and also to prove a waiver of the proofs by the defendant. The evidence on this subject shows that notice of the loss was given to the defendant's agent, the day after the fire occurred, and he made a personal inspection of the ruins at that time. He then became satisfied that the plaintiff's loss exceeded the amount of their other insurances. For when the general agent of the defendant adjusted the loss, under those policies, on the 23d of April, he inquired of the local agent, if there was any doubt about the amount of the personal property, to which the local agent

Post v. Ætna Insurance Company.

replied that he thought the plaintiffs had lost all their insurance amounted to, and more. It is not, therefore, probable that any actual injury was sustained by the defendant in consequence of the delay in serving the proofs. But their service, under the terms of the policy, is a condition precedent to the defendant's liability, which is not affected, in legal contemplation, by the fact that its non-performance was unproductive of injury. It may however be partially, or wholly, waived by the party entitled to insist upon the performance of it. And such waiver may be express, or it may be inferred from circumstances. The objection to paying was not that the proofs were not served, but that there was no legal liability on the part of the defendant for the payment of the loss. The agent insisted that the policy had not been renewed, and that no agreement for its renewal had been entered into, notwithstanding that he promised to submit the claim to the consideration of the company. And after that, when the other losses were adjusted, on the 23d of April, this claim was renewed. Then the agent replied that insurance companies were not benevolent societies, and they did not intend to do any thing about this policy, and another similarly situated, as they did not consider them renewed. If they had intended to resist payment, on account of the failure to serve the preliminary proofs, they should have so informed the plaintiffs. For they were then in time, and had the ability to remove that objection at once, by making and serving the proofs. Mere defects in the proofs served have often been held waived by an omission to insist specifically upon them, when it was in the power of the party to correct and supply the defects. (*Ætna Ins. Co.* v. *Tyler,* 16 *Wend.* 385. *McMasters* v. *The Westch. Ins. Co.* 25 *id.* 379. *Bumstead* v. *The Dividend Mut. Ins. Co.* 2 *Kern.* 81, 99. *O'Neil* v. *Buffalo Mut. Ins. Co.* 3 *Comst.* 122.) These cases concur in maintaining the principle that if the underwriter intends to insist upon defects in the proof he must notify the insured of that intention in time to afford

him an opportunity to correct them. The same principle was extended to a very material defect in the proofs, in the case of *Allegree* v. *Maryland Ins. Co.* (6 *Har. & John.* 408.) The company there declined payment, on the ground that it was not answerable for the loss. The court say: "If they intended to refuse payment of the loss because the invoice, a customary part of the preliminary proofs, had not been laid before them, it was their duty to have informed the insured, and their failure to do so, and the writing of such a letter, was a waiver of all preliminary proofs." So an answer that the underwriter would not sell the claim in any way has been held a waiver of any imperfection in the preliminary proofs. (*Clark* v. *New England Fire Ins Co.* 6 *Cushing*, 342.)

The reason upon which the principle is founded would equally justify its extension in a proper case to the waiver of proofs altogether. The conduct of the underwriter has the same tendency to mislead the party claiming indemnity, in that case, as it has where defective proofs have been furnished. When the underwriter refuses to pay because no valid contract has been entered into, the impression is necessarily conveyed, and the claimant has reason to believe, that the refusal is made solely and exclusively on that account. The company has the same power to waive the condition entirely as it has to accept an imperfect or merely colorable performance of it. Conditions precedent are waived by such conduct on the part of the party entitled to insist upon them, as is inconsistent with the purpose to require the performance of them. (*Ogden* v. *Marshall*, 4 *Seld.* 340. *Cornwell* v. *Haight*, 21 *N. Y. Rep.* 465. 3 *Phillips' Ev.* 100. *Grant* v. *Johnson*, 1 *Seld.* 252.) And contracts of insurance constitute no exception to the rule. (*Parsons on Mercantile Law*, 526. *Westlake* v. *St. Lawrence Mut. Ins. Co.* 14 *Barb.* 206.) In *Taylor* v. *Merchants' Ins. Company*, (9 *How. U. S. Rep.* 390,) this principle was carried into full

Post *v.* Ætna Insurance Company.

effect. The defendant's agent proposed by letter to insure the plaintiff's property upon certain terms mentioned. The latter replied the following day by letter accepting the terms. The next day, and before the letter reached the agent, the subject of the insurance was destroyed by fire. No policy was in fact issued, and the company afterwards refused to issue it, or pay the loss. The fire occurred on the 22d of December, 1844, and the proofs of loss were served on the 24th of November, 1845. The form of policy used by the defendant required the proofs to be served within a reasonable time. Nelson, J. delivered the opinion of the court, holding that the ground upon which the complaint originally placed their resistance to the payment of the loss, and which still is mainly relied on as fatal to the proceedings, operated as a waiver of the necessity for the production of the preliminary proofs. That is, that no obligation to insure the loss was ever entered into by the company, the contract being incomplete at the time it occurred. The objection went to the foundation of the claim, which, in connection with the refusal to issue the policy, superseded the necessity of producing these proofs; as · the production would · have been but an idle ceremony, on the part of the insured, in the further prosecution of his right. (*Id.* 403.)

This case is entitled to great weight in the disposition of the present suit, because it is directly in point upon this as well as the preceding question. It is not essential that the waiver should depend upon the direct conduct of the company as distinguished from its agent. In this matter, however, he seems to have acted under explicit directions given by the defendant after this claim had been brought to its consideration. But if he did not, he was a general agent, and as such could himself waive the compliance with the condition. (*Sheldon* v. *Atlantic Ins. Co.* 26 *N. Y. Rep.* 460.)

The remaining question arises upon the effect to be given to the releases. One of these was made and executed upon each of

the policies which were settled. The consideration mentioned in each release is the amount paid to settle the loss arising under the policy it is given upon. And the release surrenders, and cancels, the policy on which it is made. If it was intended or supposed that the language used in these different releases was broad enough to comprehend other claims, besides that arising out of the policy on which the release is made, as it is now insisted it was, there would have been neither reason nor propriety in taking a similar discharge upon each policy. That circumstance indicates the intention and understanding of the parties to have been to limit the release in each case to the discharge of the debt alone for which it was given. For the purpose of ascertaining this intention, the court should place itself in the situation of the parties, and consider the effect they designed their language to have, in view of the attendant circumstances. (1 *Greenl. on Ev.* § 287.) And as the object seems to have been to secure merely the discharge of the debt mentioned in the release, and the surrender and cancellation of the policy creating it, and nothing beyond that, the general terms employed should be limited to that object. (*Jackson* v. *Stackhouse*, 1 *Cowen*, 122, 126.) Under this construction they furnished no objection whatever to the right of the plaintiffs to maintain this action.

Judgment should be directed for the plaintiffs, on the verdict.

DAVIS, J. The jury have by their verdict disposed of the question whether the alleged agreement to renew the policy of insurance was made. It is well established that a parol contract to renew a policy is valid. (*First Baptist Society* v. *Brooklyn Fire Ins. Co.*, 19 *N. Y. Rep.* 305, *and cases there cited.*) No point is therefore made as to the sufficiency or validity of the agreement to renew, except so far as it is affected by a supposed limitation upon the authority of the

Post *v.* Ætna Insurance Company.

agent of the company to contract otherwise than by issuing a certificate, countersigned by him.

But three questions were presented on the part of the defendant, for our consideration on this motion. The first is, whether the plaintiffs have complied with the condition of the policy which required them to give immediate notice of their claim and render a particular account thereof, with an affidavit, &c. The loss occurred on the 19th day of April, 1863. No particular account thereof under this alleged insurance, with the prescribed affidavits, were served till the 1st day of July thereafter. This delay is undoubtedly fatal to the claim, under the authorities, unless it is sufficiently excused, or a strict compliance with the condition is shown to have been waived by the defendant.

It appears that the defendant had other policies on the property destroyed by the fire, to wit, one on the building and another on the stock contained therein. Notice of the fire was given to the defendant's agent on the morning following its occurrence. He went to the premises in company with the plaintiffs, and, according to the testimony of one of the plaintiffs, it was there understood between them and the agent that the whole insurance on the property was $7500, which included the amount of the policy now in question. Immediately thereafter the agent of the defendant prepared notice of the claims on the other policies, with the formal affidavits and certificates stating with particularity the property destroyed and its value. The plaintiffs, at the same time, claimed that the agent had made the agreement to renew the policy in suit, and, substantially, that they were entitled to be paid the amount of that policy. The value of the stock destroyed exceeded the amount of the whole insurance, and no question was made as to whether the loss had occurred as alleged, nor as to the kind and value of the property. The agent denied and repudiated the alleged agreement to renew the policy. In legal effect the defendant, in

respect to the loss under this policy, put itself upon the distinct and single ground that no insurance existed and no valid agreement to insure had been made, and denied its liability in toto. I think this operated as a waiver of the requirement of the policy to present immediately a notice of the claim with the particular account thereof.

The cases on the question of waiver are numerous, and substantially settle that where a refusal to pay the loss is put upon grounds other than the insufficiency or defectiveness of the notice or proofs furnished, the company will be held to have waived objections of that character. (*Tayloe* v. *Mercants' Fire Ins. Co.,* 9 *How.* [*U. S. R.*] 390. *O'Niel* v. *The Buffalo Fire Ins. Co.,* 3 *Comst.* 122. *Ætna Co.* v. *Tyler,* 16 *Wend.* 385. *Bodle* v. *Chenango Fire Ins. Co.,* 2 *Comst.* 53. *Child* v. *Sun Mut. Ins. Co.,* 3 *Sand.* 26. *Bumstead* v. *The Dividend Mut. Ins. Co.,* 2 *Kern.* 81. 23 *Wend.* 525. 9 *id.* 163.) "In 6 *Cushing,* 343," (says Gardner, Ch. J. in *Bumstead* v. *The Dividend Mut. Ins. Co.,*) "the plaintiff's application provided that he should be bound by the act of incorporation, which declared that the insured should, within thirty days after the loss, give notice in writing. The only notice given was by the letter of the agent of the company, not purporting to be upon the request of the insured. It was held that the defendants were in fact notified and their president had visited the ruins, and as no objection was taken to the form of the notice and they did not put their refusal upon that ground, but declined paying altogether, they had waived further notice. The same doctrine was affirmed in *Underhill* v. *Agawam Co.,* (6 *Cush.* 445,) and in 16 *Wend.* 385, 401, and 23 *id.* 525, 527."

In *Tayloe* v. *The Merchants' Ins. Co.,* (9 *How.* 390,) the question was raised that the usual preliminary proofs were not furnished according to the requirements of the conditions annexed to the policy. The fire occurred on the 22d of December, 1844, and the preliminary proofs were not fur-

nished till the 24th day of November, 1845. The court considered that this was too late, and it would have been fatal to the plaintiff's claim but for the fact that the company placed their refusal to pay the loss on the ground that no obligation to insure was ever entered into by the company; the contract being incomplete at the time the loss occurred. The company in that case, as in this, refused to recognize any obligations arising out of the arrangement between their agent and the assured. The refusal to recognize the existence of any claim renders the delivery of notice and proofs a useless ceremony, and must, under the authorities cited, be regarded as waiving a strict compliance with the condition as to preliminary notice and proofs, both in form and time. It follows that the notice given in the case, and the proof furnished in July, were a sufficient compliance with the requirements of the policy in this case.

The second point made by the defendant is, that the receipt of April 23, 1863, for $1000, less interest, executed under the hands and seals of the plaintiffs, was an agreement to receive that sum in full satisfaction of all loss or damage sustained by them on the stock, by the fire. This receipt was indorsed upon the other policy held by the plaintiffs upon the same stock. The amount of that policy was $1000, and the sum paid was precisely what they were conceded to be entitled to under that policy. There is no room for the idea that it was paid with any view to a compromise or adjustment of the demand in this suit; and I think the fact of its indorsement on the other policy, as a cancellation of it, shows that it was intended only as a payment of the admitted claim under that policy, and requires the receipt to be construed with particular reference to that policy. It should be read as though the words "under this policy" were inserted after the word "damage" in the receipt.

But if this be not so, it is obvious from the evidence that the instrument was not designed as an agreement of accord

and satisfaction of the claim now in suit. As a receipt it was open to explanation, and the fact that it was sealed did not change its character in that respect. The testimony showed quite clearly that the receipt embraced nothing but the loss under the policy on which it was indorsed.

The remaining point is, that the agent had no authority to make a parol extension of the policy. What the particular authority of the agent was is not shown; nor does it appear whether it was in writing or by parol. The point made is based upon the fact that the policy declares that it shall not be valid unless countersigned by the agent; and forms of renewal furnished by the company contain a clause to the same effect. From these facts it is insisted, that the agent had no authority to contract, except by the use of one of these forms subscribed by the officers of the company and countersigned by the agent. It is the custom of the company to furnish agents with policies in blank, subscribed by the officers and ready to be filled out and delivered to the agent. To guard against frauds which might be committed or attempted if these policies should get into the hands of strangers, the company have inserted the clause in question: "*This policy,*" or "*this renewal,*" shall not be valid unless countersigned by the agent named. The countersign of the agent is therefore necessary to the validity of one of these instruments in the hands of the insured; but does it operate as a limitation of the power of the agent to agree to insure or renew? The company must in all cases act by agents, and though it may provide that certain forms of agreement shall not be operative without certain formalities of execution, it does not therefore follow that no obligatory agreement can be made in any other form.

I think the cases of *First Baptist Church* v. *Brooklyn Ins. Co.*, (19 *N. Y. Rep.* 305,) and *Perkins* v. *The Washington Ins. Co.*, (4 *Cowen*, 645,) in principle determine this question against the defendant.

From these views it follows that the motion for new trial should be denied, and judgment ordered for the plaintiffs on the verdict.

GROVER and MARVIN, JJ. concurred.

Judgment for the plaintiffs.

[ERIE GENERAL TERM, November 21, 1864. *Davis, Grover, Daniels* and *Marvin,* Justices.]