CHARLES F. SMITH, Respondent, *v.* THE ÆTNA LIFE INSUR
ANCE COMPANY, Appellant.

(GENERAL TERM, EIGHTH DISTRICT, SEPTEMBER, 1871.)

Where the application upon which a policy of life insurance is issued is
    made for the benefit of the person applying, and becomes part of the
    policy, and the policy recites the payment of the consideration by the
    applicant, and the agreement is to pay " the assured," the insurance is,
    it seems, for the benefit of the applicant.
And in such case, it seems, the " assured " is the party paying the considera-
    tion, and asking for the insurance for his benefit.
It seems, in furnishing preliminary proofs the person claiming the insurance
    under a policy which agrees to pay after due proof and notice of the
    death, is not obliged to furnish proof of his insurable interest.
And if necessary to furnish such proof, a defect in that respect is waived
    by the insurer if he retains the proof furnished without objection.
Concealment or misrepresentation by an applicant for life insurance of
    symptoms of a serious and dangerous disease, in answering questions
    proposed to him by the insurer, which he agrees and professes to answer
    truly, making his answers part of the policy, avoid the policy, even
    although the insurer's examining physician examines the applicant and
    reports favorably upon the matters questioned upon.

THIS was an appeal from a judgment entered upon the
decision of a referee in favor of the plaintiff.

The plaintiff sued to recover the amount of an insurance
upon the life of Jonathan C. Smith, his deceased father, which
had been issued upon their joint application, for $2,000, and
he set forth in his complaint that he had at the time of taking
the insurance, and of the death of his father, a valuable interest
in the latter's life: also the furnishing of proof of the death
and performance of the conditions of the policy, which was
as follows:

"ÆTNA LIFE INSURANCE COMPANY, HARTFORD, CONNECTICUT.

" This policy of insurance witnesseth, that the Ætna Life
Insurance Company, in consideration of the sum of $153.70,
to them in hand paid by Charles F. Smith, and of the annual
premium of $153.70 to be paid to said company on or before
the nineteenth day of January in every year during the con

tinuance of this policy, do assure the life of Jonathan C. Smith, of Scipio, in the county of Cayuga, State of New York, in the amount of $2,000, for the term of his life.

"And the said company do hereby promise and agree, to and with the said assured, his executors, administrators and assigns, well and truly to pay or cause to be paid the said sum insured to the said assured, his executors, administrators or assigns, within ninety days after due notice and proof of the death of the said Jonathan C. Smith, and in either case all indebtedness of the party to the company shall be deducted from the sum insured:

"Provided always, and it is hereby declared to be the true intent and meaning of this policy, and the same is accepted by the assured upon the express conditions, that in case the said Jonathan C. Smith shall die upon the seas, or shall, without the consent of this company previously obtained and indorsed upon this policy, pass beyond the settled limits of the United States (except into the settled limits of the British Provinces of the two Canadas, Nova Scotia, or New Brunswick), or shall, without such previous consent thus indorsed, visit the parts of the United States which lie south of the thirty-sixth degree of north latitude, between the first of June and the first of November, or shall, without such previous consent thus indorsed, pass to or west of the Rocky Mountains, or shall, without such previous consent thus indorsed, enter into any military or naval service whatsoever (the militia not in actual service excepted), or shall, without such previous consent thus indorsed, be permanently employed as an engineer or fireman in charge of a steam engine, or as conductor or brakeman upon a railroad, or as an officer, hand or servant of any steam vessel, or in the manufacture or transportation of gunpowder, or in case he shall become so far intemperate as to impair his health seriously and permanently, or induce delirium tremens, or shall die by his own hand, or in a duel, or in consequence thereof, or by the hands of justice, or in the known violation of any law of the States or of the United States, or in consequence thereof, or of any

Smith *v.* The Ætna Life Insurance Company.

govern nent where he may be, this policy shall be void, null and of no effect.

" An l it is also understood and agreed to be the true intent and meaning hereof, that if the proposal, answers and declarations, made by the said Jonathan C. Smith, and bearing date the 19th day of January, 1867, and which are hereby made part and parcel of this policy, as fully as if herein recited, and upon the faith of which this agreement is made, shall be found in any respect false or fraudulent, then and in such case this policy shall be null and void; or in case the said assured shall not pay the said annual premium on or before the several days hereinbefore mentioned for the payment thereof, then and in every such case the said company shall not be liable to the payment of the sum insured or any part thereof, and this policy shall cease and determine.

" And it is further agreed that, in every case where this policy shall cease or be or become void, all payments made thereon shall be forfeited to the said company, and also all profits and dividend credits accruing therefrom.

" In witness whereof, the said Ætna Life Insurance Company have, by their president and secretary, signed and executed this contract in the city of Hartford, this 19th day of January, 1867, but the same shall not be binding until countersigned by William Wade, agent at Moravia, New York.

"E. A. BUCKLEY, *President.*

" T. O. ENDERS, *Secretary.*

" Countersigned at Moravia, this 11th day of February, 1867.

"WILLIAM WADE, *Agent.*

[50 Cents, U. S. Revenue
stamp canceled. ]

The answer alleged, among other things, that the policy was obtained fraudulently, and by the suppression and concealment of certain material facts by the person whose life had been insured, regarding his physical condition and health, at the time of applying for the insurance, and previously; and by reason of misstatements and false answers to questions proposed,

in writing to such person as the basis of the insurance. Also, that the certificate of the physician who made the medical examination, adopted as part of the application by the applicant, was misstated, untrue and evasive, in concealing and suppressing material facts in regard to the circumstances of the life and the health and history of the person examined.

The evidence given upon the trial so far as material appears in the opinion.

The referee found the issuing of the policy, &c., as alleged in the complaint; that the plaintiff had a valuable interest in the life of his father, at the time of insurance, which continued until the time of the latter's death; that proof of death was sent in due form and season to the defendant, and notice thereof given in due time; that the plaintiff had fulfilled the terms and conditions of the policy, &c., and he gave judgment in the plaintiff's favor for the amount of the insurance. Exceptions were taken to the referee's findings of law and facts.

*John T. Pingree,* for the appellant.

*Rollin Tracy,* for the respondent.

Present—JOHNSON, DWIGHT and J. C. SMITH, JJ.

JAMES C. SMITH, J. This is an appeal from a judgment on the report of a referee in an action on a policy of life insurance. The policy was issued by the defendants, insuring the life of Jonathan C. Smith to the amount of $2,000.

The first point made by the appellants' counsel is, that the referee erred in receiving the testimony offered by the plaintiff to show an insurable interest in himself, for the reason that the interest, thus proposed to be shown, differed from that stated in the preliminary proofs. The answer to this point is, that although the defendant objected to the eviden[c] on several specific grounds, the one now taken was not me[n] tioned at the trial. The objections specified were, that t[l]

Smith *v*. The Ætna Life Insurance Company.

evidence was improper, immaterial, irrelevant and inadmissible under the pleadings, neither of which was valid, nor is either of them now relied on.    The objection now urged could not have been taken at that stage of the trial, as the preliminary proofs had not then been introduced, and after they were introduced, the point was not raised by a motion to strike out, or otherwise.

The next position taken by the counsel for the appellant is, that the referee erred in refusing to dismiss the complaint. The first ground on which the motion to dismiss was made, was that the policy was not issued to the plaintiff, nor assigned to him, nor does it contain a promise to pay to him.    To this there are several decisive answers:   1. The complaint alleges, and the answer expressly admits, that the policy was issued for the benefit of the plaintiff.    2. The application, which by the terms of the policy is made a part of the latter instrument, is made by the plaintiff, and names him as the party for whose benefit the insurance is proposed.    3. The policy recites that the consideration was paid by the plaintiff, and the promise therein is to pay to the *assured*.    The term "assured" can mean none other than the party paying the consideration, and asking for the insurance for *his* benefit.

The only other ground stated on the motion to dismiss is, that the preliminary proofs were defective as to the insurable interest of the plaintiff.    The defect is not material, as the plaintiff was under no obligation to furnish proof of his interest.    By the terms of the policy, the insurer agreed to pay within ninety days after due notice and proof of the death of the said Jonathan C. Smith.    The death was the only fact of which the plaintiff was required to furnish proof.

But if the defect had been material it was waived by the defendants, they having retained the proofs without objection.    The defect is one which the plaintiff might have obviated, if the defendants had insisted upon it at the time, and they, not having done so, cannot now avail themselves of it to defeat the plaintiff's claim.    (25 Wend., 379; 43 Barb., 351.)

The next position taken by the appellants' counsel is of a more substantial character. It is that the evidence shows that the policy was void by reason of the fraudulent concealment of the health and condition of Jonathan C. Smith, namely, a concealment of the fact that, at the time of making the application, and for years before, the said Jonathan C. Smith was afflicted with a cough, with spitting of blood, and with shortness of breath, indicating some serious disease.

The report of the referee contains no express finding upon the questions of fact involved in this point. On looking into the testimony, it appears to be established, by evidence decidedly preponderating, if not wholly uncontradicted, that, for at least two or three years before the time when the application was made, Jonathan C. Smith was afflicted with a cough and spitting of blood, as well as a difficulty of breathing; that these maladies, especially that of blood-spitting, had been noticed by many of his acquaintances; that he had consulted physicians, and obtained prescriptions therefor, and that in his own apprehension, and in the opinion of the physicians he consulted, these difficulties were of a serious character. Jonathan C. Smith was the father of the plaintiff, and lived with the plaintiff at the time of the application, and for several months previously. The application was signed by both of them. It contained a declaration in these words: "That he" (the said Jonathan C. Smith) "is now in good health, of sound body and mind, and does usually enjoy good health; and that the following answers and statements are correct and true, in which I have not concealed, withheld or misrepresented any material circumstance in relation to the past or present state of his health, habits of life or condition, which may render an insurance on his life more than usually hazardous, or with which the directors of said company ought to be made acquainted." It also contained the following: "I do hereby agree that the answers given to the following questions, and the accompanying statements and this declaration, shall be the basis and form part of the contract or policy between me and the said company; and that if the

same be in any respect false or fraudulent, the said policy shall be void."

One of the questions referred to is the following: "Has the party ever had any of the following diseases?" Then follows a specification of some twenty diseases, including that of "spitting of blood." The only answer to this question is, "see surgeon's report." Indorsed on the application is a certificate signed by Elias A. Mead as examining physician, in which, in reply to the question "whether cough, occasional or habitual, or expectoration, or occasional or uniform difficulty of breathing, or palpitation," the answer is, " no cough, walking fast up stairs or up hill produces slight difficulty in breathing, no." In reply to the question "whether the party has *ever* suffered from mechanical injury or *disease of any kind*," the answer is, "no."

Smith died in less than four months after the date of the application of pleuro-pneumonia, as the referee found. There is no question but that if he had been affected with spitting of blood for a considerable time, it was a material circumstance, which might render an insurance on his life more than usually hazardous, and which the applicant was, therefore, bound to disclose, not only by the obvious dictates of honesty, but by the express terms of the contract. There was nothing in the nature of the question which made it necessary for the party to refer it to the examining physician for an answer, since it related to a circumstance concerning the past state of his health, which the surgeon could not know anything about, and which was fully known to and understood by the party himself. Not only was the fact known to Jonathan Smith, but the evidence would have warranted the finding that it was known to the plaintiff also. In view of the testimony as to the length of time during which the spitting of blood had continued, and the frequency with which it was manifested, it is extremely improbable that the plaintiff had not observed it during his residence, for several months, in the same family with his father. The fact that the applicant referred the question respecting the spit-

ting of blood to the surgeon; the fact that the surgeon's certificate did not answer it specifically, but gave the replies already referred to, which, for the present purpose, are to have the same effect as if they had been made by the applicant and the party, since the surgeon did no more than to write at their dictation; and the further fact testified to by the physician himself, who was called as a witness by the plaintiff, that the party did not tell him that he had spit blood, amount to almost irresistible evidence that the fact of the existence of the disease of spitting blood was intentionally and fraudulently concealed by the applicant from the knowledge of the defendants. The defendants very properly relied upon the answers and statements contained in the application. They were not required to call for more full and explicit answers. They had the right to regard the certificate of the physician as the statement of the applicant, so far as it related to the question which the applicant referred to him; and they also had a right to assume that the applicant had acquainted the physician with all the facts material to that inquiry before the certificate was made.

If, therefore, the referee had passed expressly upon the question of fact above considered, and had determined it according to what seems to us the decided weight of testimony, the defence must have prevailed.

Whether we are to regard him as having omitted to pass upon this very material issue, or as having impliedly decided it in favor of the prevailing party, according to some of the cases (27 How., 1; 49 Barb., 362), his conclusion was erroneous, since, according to the decided preponderance of evidence, the policy was procured by fraud.

The judgment should be reversed and a new trial ordered, costs to abide event.

Judgment reversed.