Daniels, J.
The plaintiff’s causes of action as they were-set forth in the complaint were four in number, dependent upon agreements for insurance made by the defendant in. favor of Margaret O’Sullivan, and assigned by her, to him. During the progress of the trial it was proved that four-policies of insurance were issued to the assignor upon two buildings, known" as Nos. 343 and 344 East Sixty-first street, in the city of New York.
At the times when the policies were issued, and the fire-took place, the buildings were in the course of erection and .completion and were unoccupied. They were described in. *317 the policies as occupied for stores and dwellings which, according to provisions contained in the policies were warranties, and not being truthful, the plaintiff was not entitled to recover upon the policies themselves. It was insisted that the company was estopped from taking this objection to the policies because of what previously transpired between its agent and officer John O’Sullivan, who acted as the agent for and on behalf of his wife, the assured named in the policies. But that position cannot very well be maintained, inasmuch as the policies were issued upon written applications conforming in their statements to this misrepresentation which was embodied in the policies. As to the policies themselves, they were based upon these applications, and in issuing them they were made out as that was designed to be done by the company and as they were applied for by the applications.
But in the trial of the action the right of the plaintiff, as the assignee of the assured, was not confined to the policies themselves, but it was mainly made to depend upon a previous agreement stated to have been made with the insurance company. This agreement, as the proof had a tendency to sustain it, was between John O’Sullivan, acting for his wife, and Mr. Harriott, a clerk of the company empowered to act for it in the presence of Mr. Stone, one of its officers. To prove the making of the agreement, O’Sullivan testified as follows: I went down there to the company’s office to pay for the policies on No. 7i East One Hundred and Twelfth street and on 2006 Fourth avenue, and after I got through paying for them Mr. Harriot said: “Well, Mr. O’Sullivan, what are you doing at present?” I said I am jnst after buying two lots in Sixty-first street, and I am putting up some buildings there in Sixty-first street, on the south side, between First and Second avenues, and I will be. ready for an insurance policy there in a short time; he asked me what what kind of buildings they were, .and I told him they were five stories, with stores on the first floor and tenements up above; I told him I would be ready for an insurance there in two or three weeks; I told him they were nearly ready for the roof to be put on, and I told him that I wanted a policy the same as was issued to me on No. 33? East Sixty-ninth street; I said I wanted a builder’s privilege into it, just the same as I had in that policy, and all that is necessary to make the place safe; he .said, “All right; you can either come down or send down;” I said to him, “Will the rate be any more than on the other?” and he said, “No, it will be just the same;” I told him it would be fall before the houses would be finished; I told him that in two or three weeks I would be ready to *318 get a policy, that I would have the roof on then, and in that policy"! wanted a builder’s privilege.
And if this testimony was truthfully given, there was a verbal agreement made between him for his wife and the company, that it would insure these buildings substantially in the same form that it had insured another building for her on East Sixty-ninth street by a policy number 337. That policy insured the building in progress of construction, and not as a completed, or occupied, structure, and permitted the work to progress which was necessary for its. completion. The rate of premium is stated" by the witness to have been agreed to as the same of the other insurance, and the buildings as well as their locality was mentioned m such a manner, as to describe and ascertain them to a reasonable degree of certainty. And these were all the elements required to be settled for the making of a complete contract of insurance. The time was specified, at the expiration of which the insurance would be required, and the policies were to be obtained either by O’Sullivan himself, or some other person sent for them. Both Harriott and Stone, who was stated to be the person with whom the conversation took place, denied the making of this agreement, and stated that no such interview had taken place in the presence of both, or either, with O’Sullivan, but their evidence did not so conclusively dispose of the case which the testimony of O’Sullivan tended in this manner to establish, as to entitle the defendant to a dismissal of the complaint. The effect of the evidence was not to be tried by the judge presiding at the trial, but that as a matter to be considered and determined by the jury. They could, if they believed O’Sullivan, find the agreement to have been made as that was stated by him, although his testimony was contradicted by these two witnesses, and may not have been entirely consistent with other evidence given upon the trial. If the jury should be satisfied upon the consideration of the testimony that O’Sullivan’s evidence was still reliable, then it would follow that a legal contract for insurance was made by him, on behalf of his wife who was the owner of the property, with the insurance company. And the agreement would remain obligatory as long as neither party refused to carry into execution. This subject was very fully considered in Post v. Ætna Insurance Company (43 Barb., 351), where a contract for insurance verbally made in a somewhat similar manner, was held to be obligatory upon the insurance company. A point not entirely dissimilar has also been considered in Landers v. Watertown Fire Insurance Company, by the general term of the fifth department, and decided in January, 1887 (6 N. Y. State Reporter, 168), where the company was held to be. *319 liable to perform a contract for insurance made in this manner, and neither of the authorities which have been brought to the attention of the court by the counsel for the defendant, contains anything gainsaying the correctness of this legal principle,
O’Sullivan gave further evidence to the effect that he did not read the policies which were afterwards issued by the defendant. Neither did the plaintiff who was the person as mortgagee of the property for whose benefit the insurance was to be made.
The testimony of O’Sullivan also contains the statement that he exhibited to Mr. Schuyler, through whose intervention the policies were obtained, the one which had been issued previously on the property on Sixty-ninth street, instructing him that the policies to be obtained from the company were to be in the same form, and that when these policies were produced and brought to his knowledge, that he believed they had been issued in the same form in which he gave his directions to Schuyler, and in compliance with the oral agreement stated to have been in this manner made with the insurance company, and that the fact was not discovered that there was this difference between these policies and the one previously issued, which it now turns out existed, and rendering them inoperative as policies of insurance upon this property. There was some evidence in the case tending to prove that O’Sullivan did acquaint himself with the contents of the policies, but it was not of such a nature as to deprive the plaintiff of the right to have that point submitted to the decision of the jury. If O’Sullivan rightly stated the facts in this respect, then there was no waiver on his part of his right to insist upon the performance of the oral agreement alleged to have been made for the issuing of these policies. For without knowledge or information of their contents, it could not be inferred that he designed to accept these policies in place of those mentioned by him in his testimony, as the form in which the insurance was to be made by the company. Whether he was right in this respect, as in the other, was therefore a question to be submitted and decided by the jury and not by the court.
That he did not design to authorize Schuyler and Beach to receive policies different from that on the Sixty-nintli street property is quite clearly evident from the testimony, for he produced to Mr. Schuyler, one of the agents, the policy on the Sixty-ninth street property as being made in the form in which the others should be obtained. Neither is it to be supposed that he authorized the insurance agents to represent to the company that the buildings were occupied as stores and dwellings, when they were not in a con *320 dition to be so occupied; and no motive could have existed on the part of O’Sullivan to misrepresent the condition of the property in this respect. If he is right as to the interview stated to have taken place at the time when it is alleged insurance was agreed upon, information was given by him to the clerk and officer of the company that the buildings were not finished, and would not be, before the fall; and the policies themselves were issued so as to take effect on the first of August, while the fire happened on the 7th of September, 1885.
If the witness O’Sullivan was correct in his statements, then there was no such lapse of time between the issuing of the policies and the occurrence of the fire, and the discovery of the form in which they had been made out, as would prevent him from refusing to accept them. In dealings of this description no very rigid rule can be applied, for some heedlessness on the part of the insured is not an uncommon attribute, and it is ordinarily excusable by reason of the manner in which the business of insurance is done.
The party receiving policies commonly takes it for granted that they are properly issued by the agents, or officers of the the company. Reliance is placed upon the expectation that the company itself will take care to make the insurance valid and effectual, and that expectation relieves the assurred from the obligation of making that degree of scrutiny as would exist if so much confidence was not reposed in the agents and officers of the company itself. In this case it was undoubtedly assumed, when the policies were received, that they were effective and legal insurances of this property And, if O’Sullivan is reliable in his statements, he had reason to believe them to be so, for he had enjoined upon the agent the description of policy expected to be obtained and had, in his interview with the clerk in the presence of one of the officers company, impressed that also upon these individuals. And he had paid the premium exacted for the description of insurance desired to be obtained on these buildings. They were not so made, and, when that fact was discovered, O’Sullivan, as the agent of his wife, was not deprived of the right to reject the policies, and to rest upon the agreement stated by him to have been made on the 15th of June, 1885, at the office of the company.
It was stated, during the progress of the trial, in evidence given on behalf of the defendant, that the buildings were being erected with hollow walls, thereby increasing the risk of the company and avoiding the insurance, but that was denied by other evidence, presenting on this part of the case, also a dispute to be determined by the jury.
*321 The assignment also made to the plaintiff has been objected to as insufficient to transfer to him the right to recover upon the oral agreement if that should be found to be sustained by the jury. But this objection appears to be without foundation for the reason that the assignment contained a transfer of all claims arising out of the injury or destruction of the premises described in the policies. That was sufficient certainly to transfer to the plaintiff any right of action which the insured had acquired through the loss and destruction of this property by fire. It will not be essential that the policies which were issued should be reformed, if the plaintiff was proved in other respects to be entitled to maintain the action, for as they may be rejected, if the evidence on behalf of the plaintiff shah prove to be reliable, he may recover upon the oral agreement to issue policies for the insurance of the property. This point was also considered in Post v. Ætna Ins. Co. (supra), where it was held that the party may either maintain the action for the specific performance by the execution and delivery of policies in proper form, or for damages for the breach of the contract to insure. And as there is no question arising in either respect upon the pleadings in this action, the plaintiff was in a situation to recover, if the evidence would warrant it under either of these views. As the evidence tended to present the case, the controlling points in controversy were for the jury and not for the court. And the judgment should be reversed and a new trial ordered with costs to the appellants to abide the event.
Van Brunt, P. J., and Brady, J., concur.